RTLC AG PRODUCTS, INC., d/b/a
RTLC Piping Products,
Appellant

v.

TREATMENT EQUIPMENT COMPA-
NY and Municipal Valve & Equip-
ment Company, Inc., Appellees.

No. 05–05–00872–CV.

Court of Appeals of Texas,
Dallas.

June 27, 2006.

John E. Agnew, Burleson, Pate & Gibson, L.L.P., Dallas, for appellant.

Scott V. Siddons, Griffith & Nixon, P.C., Gary Kessler, Dallas, for appellee.

Before Justices WRIGHT, MOSELEY, and LANG.

## OPINION

Opinion by Justice LANG.

Appellant, RTLC AG Products, Inc., d/b/a RTLC Piping Products sued Treatment Equipment Company and Municipal Valve & Equipment Company, Inc., appellees, for damages and injunctive relief for violations of the Texas Free Enterprise and Antitrust Act of 1983, intentional interference with prospective economic advantage, unfair competition, and conspiracy. In its sole issue on appeal, RTLC argues the trial court erred when it: (1) granted no-evidence summary judgments in favor of Treatment Equipment and Municipal Valve; and (2) denied its motion for reconsideration of the trial court's summary judgment in favor of Treatment Equipment. In cross points, both Treatment Equipment and Municipal Valve argue the trial court erred when it overruled their objections to the affidavits of Billy Terrell, the president of RTLC, which were attached to RTLC's responses to both Treatment Equipment's and Municipal Valve's motions for no-evidence summary judgment.

Considering all of the evidence presented by RTLC, including the affidavits of Terrell to which Treatment Equipment and Municipal Valve objected, we conclude the trial court did not err when it granted no-evidence summary judgments in favor of Treatment Equipment and Municipal Valve. Accordingly, we need not consider Treatment Equipment and Municipal Valve's cross points claiming the trial court erred when it overruled their objections to Terrell's affidavits. Further, RTLC's complaint that the trial court erred when it denied its motion for reconsideration is waived because RTLC does not cite to authority or address the issue in the argument portion of its brief. The trial court's summary judgments are affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dallas County, along with fifteen other counties, is a member of the North Texas Council of Governments, which has adopted uniform specifications for water and waste water treatment facilities, including specifications for fabricated steel and stainless steel pipe. The competing

suppliers of the specified fabricated steel and stainless steel pipe do not offer it by brand name. RTLC is a supplier of the specified fabricated steel and stainless steel pipe. The North Texas Council of Governments has also adopted specifications requiring Leopold filters and K–Flow and M & H butterfly valves. In the North Texas area, Treatment Equipment is the representative of the Leopold filters and Municipal Valve is the representative of the K–Flow and M & H butterfly valves.

The City of Dallas sought bids on the Bachman Water Treatment Plant filter improvements project based on the plans and specifications it provided. Prior to bidding on the Bachman project, Treatment Equipment, Municipal Valve, and Piping Systems, Inc., agreed to submit a bid that packaged Treatment Equipment's Leopold filters and Municipal Valve's K–Flow and M & H butterfly valves with Piping Systems's fabricated steel and stainless steel pipe. The packaged bid in the amount of $8,383,390 was submitted to Cajun Constructors, Inc., and Archer–Western Contractors, Ltd., the general contractors bidding on the Bachman project. RTLC also submitted a bid, which offered to supply the fabricated steel and stainless steel pipe for $1,069,000, to Cajun Constructors. Cajun Constructors and Archer–Western accepted the packaged bid and included it in their overall bids to the City of Dallas. The City of Dallas accepted Cajun Constructors's bid.

RTLC sued Treatment Equipment, Municipal Valve, Piping Systems, Inc., Jack S. Dovenbarger d/b/a Manufactured Valve Products, and Valve & Equipment Corporation for damages and injunctive relief for violations of the Texas Free Enterprise and Antitrust Act of 1983, intentional interference with prospective economic advantage, unfair competition, and conspiracy. Treatment Equipment and Municipal

Valve each filed general denials and asserted affirmative defenses.

On January 11, 2005, Treatment Equipment filed a motion for no-evidence summary judgment on RTLC's claims. RTLC responded to Treatment Equipment's motion for no-evidence summary judgment and produced Terrell's affidavit, which it claimed raised an issue of material fact. Treatment Equipment objected to the affidavit. On March 11, 2005, the trial court overruled Treatment Equipment's objections, but granted its motion for no-evidence summary judgment. Meanwhile, Piping Systems was dismissed from RTLC's lawsuit.

On March 23, 2005, Municipal Valve filed a motion for no-evidence summary judgment. RTLC responded to Municipal Valve's motion for no-evidence summary judgment and attached a second affidavit by Terrell, portions of the deposition testimony of Treatment Equipment's president, Bruce S. Smith, Municipal Valve's principal owner and president, David Lee Goodwin, and Cajun Constructors's senior estimator, Jimmy Dale Smith. Municipal Valve objected to Terrell's affidavit. Also, RTLC filed a motion for reconsideration of the no-evidence summary judgment in favor of Treatment Equipment. On May 23, 2005, the trial court granted Municipal Valve's motion for no-evidence summary judgment and denied RTLC's motion for reconsideration of the no-evidence summary judgment in favor of Treatment Equipment. After the trial court entered the no-evidence summary judgments, RTLC nonsuited Manufactured Valve Products and Valve & Equipment Corporation.

## II. NO–EVIDENCE SUMMARY JUDGMENT

RTLC argues the trial court erred when it granted no-evidence summary judg-

ments in favor of Treatment Equipment and Municipal Valve because RTLC raised more than a scintilla of evidence to prove: (1) Treatment Equipment and Municipal Valve's packaging of generic pipe with their sole source filters and valves to general contractors bidding on water and waste water treatment projects in the North Texas market had a substantial adverse competitive impact on other pipe suppliers' attempts to offer to sell the same generic pipe to the same general contractors; and (2) Treatment Equipment and Municipal Valve's packaging of generic pipe with their sole source filters and valves to general contractors bidding on waste water treatment projects in the North Texas market caused RTLC to suffer damages. Treatment Equipment and Municipal Valve respond that RTLC failed to come forward with evidence of an antitrust injury or its other causes of action.

### A. Standard of Review

The same legal sufficiency standard of review that is applied when reviewing a directed verdict is also applied when reviewing a no-evidence summary judgment. *See Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.). When reviewing a no-evidence summary judgment, an appellate court must determine whether the non-movant produced any evidence of probative force to raise a fact issue on the material questions presented. *Id.* at 833. An appellate court reviews a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *See Wal–Mart, Stores Inc. v. Spates,* 186 S.W.3d 566, 568 (Tex.2006) (per curiam) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005)). A reviewing court views all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was ren-dered and disregards all contrary evidence and inferences. *See Merrell Dow Pharmaceuticals v. Havner,* 953 S.W.2d 706, 711 (Tex.1997); *see also Gen. Mills,* 12 S.W.3d at 833. A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *See Gen. Mills,* 12 S.W.3d at 833. More than a scintilla of evidence exits when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *See Merrell Dow,* 953 S.W.2d at 711.

### B. Applicable Law

After an adequate time for discovery, a party may move for summary judgment under Texas Rule of Civil Procedure 166a(i) on the ground that no evidence exists to support: (1) one or more essential elements of a claim; or (2) a defense which an adverse party has the burden to prove at trial. Tex.R. Civ. P. 166a(i); *Caldwell v. Curioni,* 125 S.W.3d 784, 789 (Tex.App.-Dallas 2004, pet. denied). In a no-evidence summary judgment, the movant does not bear the burden of establishing each element of his claim or defense. *Gen. Mills,* 12 S.W.3d at 833. Rather, the nonmovant assumes the burden to present enough evidence to raise a genuine issue of material fact showing that he is entitled to a trial. *See id.* The trial court must grant the motion for no-evidence summary judgment unless the nonmovant produces more than a scintilla of evidence that raises a genuine issue of material fact on the challenged elements. Tex.R. Civ. P. 166a(i); *see Gen. Mills,* 12 S.W.3d at 832–33.

The Texas Free Enterprise and Antitrust Act states that its purpose is to maintain and promote economic competition in trade and commerce, and to provide the benefits of that competition to Texas

consumers. *See* Tex. Bus. & Com.Code Ann. § 15.04 (Vernon 2002). Antitrust laws protect competition, not competitors, and ultimately, the consumer is the beneficiary. *See Atlantic Richfield Co. v. USA Petrol. Co.,* 495 U.S. 328, 338, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990); *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.,* 28 F.3d 1379, 1382 (5th Cir.1994). The provisions of the Texas Free Enterprise and Antitrust Act are construed in harmony with federal judicial interpretations of comparable federal antitrust statutes to the extent they are consistent with the purpose of the Act. *See* Tex. Bus. & Com.Code Ann. § 15.04.

■ The Texas Free Enterprise and Antitrust Act provides that "Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful." *Id.* § 15.05(a). Also, it is unlawful for any person to sell any goods on the condition that the buyer shall not use or deal in the goods of a competitor or the competitors of the seller, where the effect of the condition may be to lessen competition substantially in any line of trade or commerce. *See id.* § 15.05(c). An illegal tying arrangement has five elements: (1) a tying; (2) actual coercion by the seller that forced the buyer to purchase the tied product; (3) the seller must have sufficient market power in the tying product market to force the buyer to accept the tied product; (4) there are anticompetitive effects in the tied market; and (5) the seller's activity in the tied product must involve a substantial amount of interstate commerce. *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 22 (Tex. App.-Dallas 1988, writ denied); *accord Logic Process Corp. v. Bell & Howell Publ'ns Sys. Co.,* 162 F.Supp.2d 533, 539 (N.D.Tex.2001).

■ A tying arrangement occurs when a seller agrees to sell one product on the condition that the buyer also agrees to purchase a different product or the buyer agrees that he will not purchase the same product from another supplier. *See Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 462, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Apani Sw., Inc. v. Coca–Cola Enters., Inc.,* 300 F.3d 620, 625 (5th Cir.2002); *Logic Process,* 162 F.Supp.2d at 539. The desired product is the tying product and the second product on which the purchase of the desired product is conditioned is the tied product. *See Logic Process,* 162 F.Supp.2d at 539. A tying arrangement cannot exist unless two separate product markets have been linked. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 21, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). However, not every tying arrangement is an illegal tying arrangement. *See MJR Corp.,* 760 S.W.2d at 22. The assumption that tying arrangements serve hardly any purpose beyond the suppression of competition or that tying arrangements constitute a per se violation of the Sherman Act was rejected by the Supreme Court in *Jefferson Parish. See Illinois Tool Works Inc. v. Indep. Ink, Inc.,* —— U.S. ——, 126 S.Ct. 1281, 1287– 88, 164 L.Ed.2d 26 (2006).[1] Many tying

---

1. In *Illinois Tool,* the Supreme Court determined that a tying arrangement should be evaluated under the standard applied in *Jefferson Parish,* which required proof of sufficient market power to restrain competition in the tied market. However, in dictum, *Jefferson Parish* also repeated the market power presumption established in prior cases when it stated, "if the government has granted the seller a patent or similar monopoly over a product, it is fair to presume that the inability to buy the product elsewhere gives the seller market power." *See Illinois Tool,* at 1284 (quoting *Jefferson Parish,* 466 U.S. at 16, 104 S.Ct. 1551). The Supreme Court rejected this dictum in *Jefferson Parish* along with the cases that established the market power presumption. *See id.* at 1284–85, 1287–88, 1290–91.

arrangements, even those involving patents and requirement ties, are fully consistent with a free, competitive market. *See id.* at 1292.

■■■ Actual coercion must be established to support a tie-in claim. *See Logic Process,* 162 F.Supp.2d at 539–40. An antitrust violation occurs only if the seller goes beyond persuasion and actually coerces or forces the buyer to purchase the tied product in order to obtain the tying product. *See id.* The essential characteristic of an illegal tying arrangement is the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms. *See Jefferson Parish,* 466 U.S. at 12, 104 S.Ct. 1551. The refusal to sell, standing alone, is not coercion. *See Logic Process,* 162 F.Supp.2d at 540.

■■■ In all cases involving a tying arrangement, the plaintiff must prove the defendant has market power in the tying product. *Illinois Tool,* 126 S.Ct. at 1293. Market power is the power to force a buyer to do something he would not do in a competitive market. *See Eastman Kodak,* 504 U.S. at 464, 112 S.Ct. 2072; *Jefferson Parish,* 466 U.S. at 14, 104 S.Ct. 1551; *see also Illinois Tool,* 126 S.Ct. at 1287–91 (tying arrangements should be reviewed under the *Jefferson Parish* standard, which requires proof of sufficient market power to restrain competition in tied product). It is the ability of a single seller to raise prices and restrict output. *See Eastman Kodak,* 504 U.S. at 464, 112 S.Ct. 2072. The existence of such power is inferred from the seller's possession of a predominant share of the market. *See Eastman Kodak,* 504 U.S. at 464, 112 S.Ct. 2072; *Jefferson Parish,* 466 U.S. at 17, 104 S.Ct. 1551. When the seller offers a unique product that competitors are not able to offer, there is a likelihood that market power exists. *See Jefferson Parish,* 466 U.S. at 17, 104 S.Ct. 1551. In certain situations, a buyer's decision to sole-source or adopt a particular specification may be indicative of competition. *See Stearns Airport Equip. Co. v. FMC Corp.,* 170 F.3d 518, 524 (5th Cir.1999).

■■■ Not every refusal to sell two products separately can be said to restrain competition. *See Jefferson Parish,* 466 U.S. at 11, 104 S.Ct. 1551; *Hollymatic,* 28 F.3d at 1382. If each of the products may be sold separately in a competitive market, one seller's decision to sell the two in a single package imposes no unreasonable restraint on either market, particularly if competing suppliers are free to sell either the entire package or its several parts. *See Jefferson Parish,* 466 U.S. at 11, 104 S.Ct. 1551.

■■■ An actual, substantial, and material restraint on trade must be shown to establish an illegal tying arrangement. *See MJR Corp.,* 760 S.W.2d at 22. Tying arrangements are not condemned unless a substantial volume of commerce is foreclosed. *See id.* (citing *Jefferson Parish,* 466 U.S. at 16, 104 S.Ct. 1551). If only a single buyer is forced to purchase a tied item, the impact on competition is not sufficient to warrant the concern of antitrust law. *See Jefferson Parish,* 466 U.S. at 16, 104 S.Ct. 1551; *MJR Corp.,* 760 S.W.2d at 22.

### C. Application of the Law to the Facts

■■■ First, we focus on RTLC's argument that the trial court erred when it granted the summary judgment as a matter of law because tying steel pipe to the sole source filters and butterfly valves is an arrangement, which, on its face, has an anti-competitive effect and is a per se vio-

lation of the Texas antitrust laws. Since RTLC filed its brief in this appeal, the Supreme Court addressed the question of whether tying arrangements are per se violations of the antitrust laws. *See Illinois Tool*, —— U.S. ——, 126 S.Ct. 1281, 164 L.Ed.2d 26. In *Illinois Tool*, the Supreme Court rejected the law of cases applying this per se rule to tying cases and stated that a tying arrangement should be reviewed under the *Jefferson Parish* standard, which requires proof of sufficient market power to restrain competition in the tied product. *See id.* at 1287–91. The Texas legislature has directed that the provisions of the Texas Free Enterprise and Antitrust Act are to be construed in harmony with federal judicial interpretation of comparable federal antitrust statutes. *See* TEX. BUS. & COM.CODE ANN. § 15.04; *Abbott Labs., Inc. (Ross Labs. Div.) v. Segura*, 907 S.W.2d 503, 505 (Tex. 1995); *Caller–Times Publ'g Co. v. Triad Commc'ns, Inc.*, 826 S.W.2d 576, 580 (Tex. 1992). Accordingly, RTLC's argument in this regard is not sustained.

 Second, we address whether RTLC met its burden as to Treatment Equipment's and Municipal Valve's motions for no-evidence summary judgment. Facts supporting all five elements of an illegal tying arrangement must be brought forward by a plaintiff in order to defeat a no-evidence motion for summary judgment. *See Logic Process*, 162 F.Supp.2d at 539 (plaintiff must establish each of five elements for an illegal tying arrangement to exist). Accordingly, should we conclude RTLC failed to raise more than a scintilla of evidence on any one element, RTLC will not have met its burden. *See* TEX.R. CIV. P. 166a(i); *Gen. Mills*, 12 S.W.3d at 832–33 (trial court must grant no-evidence summary judgment unless nonmovant produces more than scintilla of evidence, raising fact issue on challenged elements). In

this regard, we will address the element of a tying arrangement that requires the seller's activity in the tied product to involve a substantial amount of market commerce.

 Tying arrangements are not condemned unless a substantial volume of commerce is foreclosed. *See MJR Corp.*, 760 S.W.2d at 22. RTLC's summary-judgment evidence, including the affidavits of Terrell, RTLC's president, show a tying arrangement only with respect to the Bachman project and an impact on competition only with respect to the City of Dallas, a single buyer. Evidence that only the City of Dallas, a single buyer, was forced to purchase Piping Systems's fabricated steel and stainless steel pipe is not sufficient to warrant the concern of antitrust law. *See Jefferson Parish*, 466 U.S. at 16, 104 S.Ct. 1551; *MJR Corp.*, 760 S.W.2d at 22.

Third, in their cross points, Treatment Equipment and Municipal Valve argue the trial court erred when it overruled their objections to Terrell's affidavits, which were attached to RTLC's responses to their motions for no-evidence summary judgment. However, because we concluded the evidence offered by RTLC, including the Terrell affidavits, is insufficient to meet RTLC's burden, we need not address these cross points.

 Fourth, we consider RTLC's common law claims. Treatment Equipment and Municipal Valve argue the alleged antitrust violation is the only wrong that will support RTLC's claims of intentional interference with prospective economic advantage, unfair competition, and conspiracy. They contend that all of these causes of action have a common element, i.e., evidence of an independent tort or wrongful act.

 The elements of tortious interference with a contract are: (1) the exis-

tence of a contract subject to interference; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss. *See Powell Indus., Inc. v. Allen,* 985 S.W.2d 455, 456 (Tex.1998); *Recognition Commc'ns, Inc. v. Am. Auto. Ass'n, Inc.,* 154 S.W.3d 878, 892 (Tex.App.-Dallas 2005, pet. denied) (op. on reh'g). To recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful, i.e., the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort. *See Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 726 (Tex.2001).

■■■■ The elements of civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *See Tri v. J.T.T.,* 162 S.W.3d 552, 556 (Tex.2005). Civil conspiracy is a derivative tort and a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *See Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996); *Yokogawa Corp. of Am. v. Skye Int'l Holdings, Inc.,* 159 S.W.3d 266, 272 (Tex.App.-Dallas 2005, no pet.).

■■■■ To prevail on an unfair competition claim, a plaintiff must establish two elements: (1) the plaintiff's trade name has acquired a secondary meaning through usage; and (2) the similarity of the name used by the defendant would be likely to confuse the public. *See Associated Tel. Directory Publishers, Inc. v. Five D's Publ'g Co.,* 849 S.W.2d 894, 898 (Tex.App.-Austin 1993, no writ); *Hudgens v. Goen,* 673 S.W.2d 420, 423 (Tex.App.-Fort Worth 1984, writ ref'd n.r.e.). Without some find-

ing of an independent substantive tort or other illegal conduct, liability cannot be premised on the tort of "unfair competition." *See Schoellkopf v. Pledger,* 778 S.W.2d 897, 905 (Tex.App.-Dallas 1989, writ denied).

The independent tort or wrongful act alleged by RTLC to support these causes of action was the alleged illegal tying arrangement or antitrust violation. Accordingly, RTLC has failed to produce more than a scintilla of evidence to preclude summary judgment on its common law causes of action because it failed to produce more than a scintilla of evidence on the underlying antitrust claim. *See* Tex.R. Civ. P. 166a(i); *Gen. Mills,* 12 S.W.3d at 832–33 (trial court must grant no-evidence summary judgment unless nonmovant produces more than scintilla of evidence, raising fact issue on challenged elements).

We conclude the trial court did not err when it granted Treatment Equipment's and Municipal Valve's motions for no-evidence summary judgment. To the extent it complains of the trial court's summary judgments, RTLC's sole issue is decided against it.

### III. MOTION TO RECONSIDER

■■■ RTLC also argues the trial court erred when it denied its motion for reconsideration of the summary judgment in favor of Treatment Equipment. However, RTLC does not cite authority or address the trial court's denial of its motion for reconsideration in the argument portion of its brief. Accordingly, to the extent RTLC complains of the trial court's order denying its motion for reconsideration, RTLC has waived the issue and we will not address it. *See* Tex.R.App. p. 38.1(h).

### IV. CONCLUSION

The trial court did not err when it granted no-evidence summary judgments

in favor of Treatment Equipment and Municipal Valve. Accordingly, we need not consider Treatment Equipment and Municipal Valve's cross points claiming the trial court erred when it overruled their objections to Terrell's affidavits. Further, RTLC's complaint that the trial court erred when it denied its motion for reconsideration is waived.

The trial court's summary judgments are affirmed.