**Cheri DUNCAN–HUBERT, Appellant,**

v.

**Mayor Steve MITCHELL, Appellee.**

**No. 05–09–00018–CV.**

Court of Appeals of Texas, Dallas.

March 18, 2010.

Rehearing Overruled May 17, 2010.

Billy R. McGill, Dallas, TX, for Appellant.

Amber Leah Slayton, Nichols, Jackson, Dillard, Hager & Smith, LLP, Dallas, TX, for Appellee.

Before Justices O'NEILL, LANG, and MYERS.

## OPINION

Opinion By Justice LANG.

This case involves an election contest pertaining to a special election on proposed amendments to a city charter. Appellant Cheri Duncan–Hubert appeals the trial court's order granting appellee Mayor Steve Mitchell's motion for no-evidence summary judgment. Duncan–Hubert asserts two issues on appeal: (1) "[t]he trial court erred in granting summary judgment in favor of [Mitchell]" and (2) "[t]he trial court erred in granting summary judgment in favor of [Mitchell] because a genuine issue of material fact exists with regard to whether the election irregularities in this case were such as to render it impossible to determine the will of a majority of voters." [1]

For the reasons below, we decide in favor of Duncan–Hubert on her two issues. We reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 27, 2007, the city council of the City of Richardson passed an ordinance requiring a special election on three proposed city charter amendments to be held on the uniform election date of November 6, 2007. All three of the propositions passed in the election.

On December 14, 2007, Duncan–Hubert, a Richardson resident, filed this lawsuit against Mitchell in his capacity as mayor of Richardson. In her May 5, 2008 first amended petition, Duncan–Hubert contended Mitchell (1) held the election at issue without first obtaining a petition signed by the requisite number of qualified voters; (2) did not publish notice of the election in a newspaper of general circulation in each of two successive weeks as required by the Texas Local Government Code; (3) endorsed and supported a "political advertisement/mailing" purport-

---

1. Duncan–Hubert does not provide separate argument for each of her two issues or otherwise address them separately on appeal. *See* Tex.R.App. P. 38.1(i) (brief must contain a clear and concise argument for the contentions made). However, we construe her appellate argument to address both issues and we consider her two issues together for purposes of this opinion. *See* Tex.R.App. P. 38.9 (briefing rules to be construed liberally).

ing to be from "Richardson Citizens for Charter Change" when, in actuality, the true source of the mailing was the Richardson Chamber of Commerce; (4) may have used public funds to fund all or part of the mailing from "Richardson Citizens for Charter Change"; and (5) published misleading statements to the voters of Richardson about the proposed charter amendments. Duncan–Hubert asserted a single cause of action in which she alleged in relevant part (1) the outcome of the November 6, 2007 election is not the true outcome because Mitchell "engaged in fraud, illegal conduct or made a mistake" and (2) "the election would have had a different result had the fraud, illegal conduct and/or mistakes [of Mitchell] not occurred" or, alternatively, "such fraud, illegal conduct and/or mistakes renders it impossible to determine the will of a majority of Richardson voters."

Mitchell filed original and amended answers in which he, in relevant part, generally denied Duncan–Hubert's claims and specially excepted to Duncan–Hubert's first amended petition for "failure to state a cause of action for an election contest and failure to state a claim upon which relief can be granted." Mitchell stated in his July 25, 2008 amended answer

[Duncan–Hubert] has failed to allege the essential elements of such cause of action and to plead facts in support of these elements. In order to maintain an election contest based on fraud or illegal conduct, a contestant must allege and prove that a different result would have been reached or irregularities in the conduct of an election were such as to render it impossible to determine the will of the majority of the voters participating. [Duncan–Hubert's] amended petition alleges that different results would have been reached had the alleged fraud not taken place or irregularities in the conduct of the election were

such as to render it impossible to determine the will of the majority of the voters participating. [Duncan–Hubert], however, does not plead facts to support how or why such is true.

(citations omitted).

On August 7, 2008, Mitchell filed a "No–Evidence Motion for Summary Judgment" pursuant to rule 166a(i) of the Texas Rules of Civil Procedure. *See* TEX.R. CIV. P. 166a(i). As the sole basis for that motion, Mitchell contended Duncan–Hubert "has no evidence that different results would have been reached or that irregularities in conduct of an election were such as to render it impossible to determine the will of the majority of the voters participating." Mitchell asserted that because Duncan–Hubert had "no evidence whatsoever to support this required element of her cause of action," he was entitled to summary judgment against Duncan–Hubert as a matter of law.

Duncan–Hubert filed a response to Mitchell's motion for no-evidence summary judgment on September 22, 2008. In her response, Duncan–Hubert stated she was relying on summary judgment evidence consisting of affidavits, and the exhibits attached thereto, of herself, attorney Billy McGill, and experts Daniel Powers and Nathan Morgan. Duncan–Hubert asserted in relevant part that (1) Powers is an assistant professor of sociology at the University of Texas at Austin and has authored several books and peer-reviewed articles relating to applied statistics and research methods and (2) Morgan served as a election judge in the election at issue and has educational training in the fields of market research, statistics, and behavioral science. According to Duncan–Hubert, both Powers and Morgan opined that "from a statistical analysis standpoint, it would be impossible to predict or determine with any reasonable degree of accuracy, even with voter polling data, whether

the outcome of the election would have been different had the irregularities complained about [in this case] not occurred." Duncan–Hubert contended the opinions expressed by Powers and Morgan "are more than sufficient to raise a fact issue with regard to whether the election irregularities in this case were such as to render it impossible to determine the will of a majority of the Richardson voters."

On September 25, 2008, Mitchell filed objections to Duncan–Hubert's summary judgment evidence and a motion to strike the affidavits of Powers and Morgan. Mitchell asserted in relevant part that Powers (1) was not timely designated by Duncan–Hubert as an expert witness, (2) did not offer a reliable opinion, (3) did not disclose the facts or data underlying his opinion, and (4) is not qualified as an expert. With respect to Morgan, Mitchell asserted objections substantially similar to those described above and, in addition, contended Morgan's affidavit (1) "includes information not based on personal knowledge and that is conclusory," (2) contains legal and/or factual conclusions not supported by facts, and (3) "contains hearsay and information not based on personal knowledge."

After a September 29, 2008 hearing,[2] the trial court granted Mitchell's motion for no-evidence summary judgment in an order dated October 7, 2008. Duncan–Hubert filed a timely motion for new trial on November 11, 2008. The record is silent as to the disposition of that motion. This appeal timely followed.

## II. NO–EVIDENCE SUMMARY JUDGMENT

### A. Standard of Review

We review a trial court's decision to grant summary judgment de novo. *Va-*

lence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.2005). When reviewing a no-evidence summary judgment, we apply the same legal sufficiency standard of review that is applied when reviewing a directed verdict. *Hogan v. J. Higgins Trucking, Inc.,* 197 S.W.3d 879, 882 (Tex.App.-Dallas 2006, no pet.). Under that standard, we must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *RTLC AG Prods., Inc. v. Treatment Equip. Co.,* 195 S.W.3d 824, 833 (Tex.App.-Dallas 2006, no pet.). We review all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered and disregard all contrary evidence and inferences. *See Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex.2006) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005)); *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997); *RTLC AG Prods., Inc.,* 195 S.W.3d at 829. A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *See RTLC AG Prods., Inc.,* 195 S.W.3d at 829. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *See Wal–Mart Stores, Inc. v. Spates,* 186 S.W.3d 566, 568 (Tex.2006) (citing *City of Keller,* 168 S.W.3d at 822); *Merrell Dow Pharms., Inc.,* 953 S.W.2d at 711; *RTLC AG Prods., Inc.,* 195 S.W.3d at 829.

### B. Applicable Law

▮ A court trying an election contest shall attempt to ascertain whether the out-

2. The record on appeal contains no reporter's record of the September 29, 2008 hearing on

Mitchell's motion for no-evidence summary judgment.

come shown by the final canvass was not the true outcome because illegal votes were counted or because an election official or other person officially involved in the administration of the election (1) prevented eligible voters from voting, (2) failed to count legal votes, or (3) engaged in other fraud or illegal conduct or made a mistake. Tex. Elec.Code Ann. § 221.003(a) (Vernon 2010). To set aside the outcome of an election, the contestant must prove by clear and convincing evidence that a violation of the election code occurred and such violation materially affected the outcome of the election. *McCurry v. Lewis*, 259 S.W.3d 369, 372–73 (Tex.App.-Amarillo 2008, no pet.). The outcome of an election is "materially affected" when a different and correct result would have been reached in the absence of irregularities or "irregularities in the conduct of the election render it impossible to determine the majority of the voters' true will." *Id.* at 373; *see also Gonzalez v. Villarreal*, 251 S.W.3d 763, 773, 777–78 (Tex.App.-Corpus Christi 2008, pet. denied); *Ware v. Crystal City Indep. Sch. Dist.*, 489 S.W.2d 190, 191–92 (Tex.Civ. App.-San Antonio 1972, writ dism'd).

## C. Analysis

In the argument section of her "Brief of Appellant," Duncan–Hubert asserts the trial court erred by granting summary judgment in favor of Mitchell because a genuine issue of material fact exists regarding whether the election irregularities in this case were such as to render it impossible to determine the will of a majority of voters. According to Duncan–Hubert, the expert testimony offered by her in response to Mitchell's no-evidence summary judgment motion "raised genuine issues of material fact with regard to whether it is impossible to go back and determine (1) whether voter turnout would have been greater if the notice and petition requirements had been met, and how a larger turnout would have affected the election outcome, and (2) the extent to which the misleading and deceptive article and mail out improperly influenced voters who voted in the election, and whether they would have voted for the measure had they not been mislead [sic]."

Mitchell responds that although Duncan–Hubert submitted evidence in her response to his motion for no-evidence summary judgment, she failed to establish a genuine issue of material fact existed. Mitchell asserts none of Duncan–Hubert's submitted evidence constitutes "competent" summary judgment evidence that "different results would have been reached or that irregularities in the conduct of an election were such as to render it impossible to determine the will of the majority of the voters participating." Specifically, Mitchell contends (1) the affidavits of Duncan–Hubert and McGill "focus on the alleged violations, not any impact on the election" and (2) "[Powers and Morgan] fail as expert witnesses; [Duncan–Hubert] never designated either as an expert pursuant to the Texas Rules of Civil Procedure, both fail to qualify as experts, and neither affiant's opinions are reliable." Further, Mitchell asserts in footnotes in his appellate brief that Duncan–Hubert failed to address his objections to her summary judgment evidence in her brief on appeal "despite the trial court ... impliedly ruling" on such objections, and on his motion to strike the affidavits of Powers and Morgan, by granting his motion for no-evidence summary judgment. Therefore, Mitchell argues, Duncan–Hubert "has waived any right to complain about this issue." According to Mitchell, "the rules of law and evidence bar the Court from giving weight to the only evidence [Duncan–Hubert] offered to prove that the alleged violations(s) of the Election Code

materially affected the outcome of the election."

▆▆▆ In a reply brief in this Court, Duncan–Hubert asserts the trial court did not rule on Mitchell's objections to her summary judgment evidence and such evidence is part of the summary judgment proof for purposes of this appeal. Further, Duncan–Hubert argues (1) all objections made by Mitchell as to the form of the summary judgment evidence, "including without limitation hearsay, lack of personal knowledge, and statements of opinion," were waived by Mitchell's failure to obtain a ruling on such objections and (2) Mitchell's objections as to substance are without merit.[3]

### 1. Implied Rulings on Objections and Motions to Strike

#### a. Applicable Law

▆▆▆ Rule 33.1 of the Texas Rules of Appellate Procedure provides in relevant part that as a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion that was sufficiently specific and the trial court (1) ruled on the request, objection, or motion either expressly or implicitly or (2) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal. TEX.R.APP. P. 33.1(a); *see also Unifund CCR Partners v. Jackson,* No. 05–07–01226–CV, 2009 WL 3019736, at *1 (Tex. App.-Dallas Sept. 23, 2009, no pet.) (mem. op.). Pursuant to rule 33.1, the party objecting to summary judgment evidence has the burden to obtain a ruling on that party's objections. *Trusty v. Strayhorn,* 87 S.W.3d 756, 760 (Tex.App.-Texarkana 2002, no pet.). However, that burden is satisfied if (1) the record affirmatively indicates that the trial court ruled on the objections to the summary judgment evidence in granting summary judgment, or (2) the grounds for summary judgment and the objections to the summary judgment evidence are of such a nature that the granting of summary judgment necessarily implies a ruling on the objections. *Id.*

#### b. Application of Law to Facts

▆▆▆ The trial court's order granting Mitchell's motion for no-evidence summary judgment stated in relevant part as follows:

> On October 7th, 2008, the Court considered Contestee Mayor Steve Mitchell's No–Evidence Motion for Summary Judgment. After considering the mo-

---

**3.** In addition to responding to Mitchell's arguments regarding the preservation of challenges to the summary judgment evidence, Duncan–Hubert argues for the first time in her reply brief that (1) because Mitchell failed to substantially comply with the law governing notice of a special election, Duncan–Hubert was not required to show that the result of the election would have been different absent the irregularities complained of or that the irregularities were such as to render it impossible to determine the will of a majority of the voters and (2) expert testimony is not necessary in this case because the general experience and common understanding of a layperson would be sufficient to determine the fact issues involved. However, "we do not consider arguments raised for the first time in a reply brief." *Melartin v. CR & R, Inc.,* No. 14–05–00519–CV, 2009 WL 972484, at *1 n. 1 (Tex.App.-Houston [14th Dist.] Mar. 24, 2009, no pet.) (mem. op.); *Rehabworks, LLC v. Flanagan,* No. 03–07–00552–CV, 2009 WL 483207, at *4 (Tex.App.-Austin Feb. 26, 2009, pet. denied) (mem. op.); TEX.R.APP. P. 38.3 ("appellant may file a reply brief addressing any matter in the appellee's brief"). Accordingly, those arguments present nothing for this Court's review. *See Myan Mgmt. Group, L.L.C. v. Adam Sparks Family Revocable Trust,* 292 S.W.3d 750, 754 n. 1 (Tex.App.-Dallas 2009, no pet.).

tion, the response and all other evidence on file, the Court

FINDS there is no genuine issue of material fact. It is therefore OR-DERED, ADJUDGED AND DE-CREED that Contestee Mayor Steve Mitchell's No–Evidence Motion for Summary Judgment is hereby GRANTED in its entirety; that judgment is hereby entered in favor of Mayor Steve Mitchell on all of Contestant Cheri Duncan–Hubert's claims and causes of action; that Contestant Cheri Duncan–Hubert take nothing against Mayor Steve Mitchell, and that Mayor Steve Mitchell recover all taxable court costs in his behalf expended of and from Contestant Cheri Duncan–Hubert.

IT IS FURTHER ORDERED that all relief requested not expressly granted herein is denied.

(emphasis original).

Mitchell contends he preserved his objections to Duncan–Hubert's summary judgment evidence "by timely filing them with the trial court," and the trial court "implicitly granted" his objections and his motion to strike the affidavits of Powers and Morgan by entering an order granting his motion for no-evidence summary judgment. However, in each of the two cases cited by Mitchell as direct support for that proposition, the appellate court focused specifically on whether an implicit ruling by the trial court was demonstrated by the record.[4] *See Frazier v. Yu,* 987 S.W.2d 607, 610 (Tex.App.-Fort Worth 1999, pet. denied) (where trial court's order granting

summary judgment stated court had reviewed all "competent" evidence, record showed trial court had implicitly ruled on objections to summary judgment evidence); *Columbia Rio Grande Reg'l Hosp. v. Stover,* 17 S.W.3d 387, 396 (Tex.App.-Corpus Christi 2000, no pet.) (concluding implied ruling on objections to summary judgment evidence was shown by record where objections were explicitly overruled at hearing). In this case, nothing in the record indicates the trial court implicitly sustained Mitchell's objections. The record shows that in an October 2, 2008 letter brief, Mitchell's counsel stated, "Contestee [Mitchell] requests that the Court consider its objections, which were timely filed and preserved, upon giving Contestant [Duncan–Hubert] a reasonable opportunity to respond orally, in writing, or both, as determined by the Court." The trial court's order states the trial court "considered" the motion, the response, and "all other evidence on file." However, such language does not indicate a ruling. *See Trusty,* 87 S.W.3d at 761 ("[n]o case has held that a trial court implicitly sustained objections to summary judgment proof when the record and the court's order indicated only that the trial court considered the objections"). Further, if the trial court overruled Mitchell's objections and denied the motion to strike, the trial court still could have granted summary judgment if it found, whether correctly or incorrectly, that the evidence was insufficient to create a fact question precluding summary judgment. *Id.; see also Mead v. RLMC, Inc.,*

4. In addition, Mitchell directs this Court to *"see also" Clement v. City of Plano,* 26 S.W.3d 544, 550 n. 5 (Tex.App.-Dallas 2000, no pet.), *disapproved on other grounds by Telthorster v. Tennell,* 92 S.W.3d 457, 464 (Tex. 2002). In *Clement,* this Court stated, without discussion, that the trial court had "implicitly overruled" a nonmovant's special exceptions to a traditional summary motion. In support

of that statement, this Court cited authority for the proposition that error can be preserved "as long as the record indicates in some way that the trial court ruled on the objection either expressly or impliedly." *Id.* Mitchell does not address the facts of *Clement* or explain how that case supports his proposition.

225 S.W.3d 710, 714 (Tex.App.-Fort Worth 2007, pet. denied) (distinguishing *Frazier* from cases where record did not demonstrate implied ruling). Consequently, we cannot infer that, merely by granting Mitchell's motion for no-evidence summary judgment, the trial court necessarily sustained the objections at issue and granted the motion to strike. *See Trusty,* 87 S.W.3d at 761; *Mitchell v. Baylor Univ. Med. Ctr.,* 109 S.W.3d 838, 842–43 (Tex. App.-Dallas 2003, no pet.) (no ruling implied where record did not show trial court sustained objections to summary judgment evidence); *see also Well Solutions, Inc. v. Stafford,* 32 S.W.3d 313, 317 (Tex.App.-San Antonio 2000, no pet.) (trial court did not impliedly overrule objections to summary judgment evidence by including "Mother Hubbard" clause in summary judgment order).

### 2. Mitchell's Objections to Summary Judgment Evidence

#### a. Applicable Law

##### i. Substance Versus Form

 "Bare, baseless opinions will not support a judgment even if there is no objection to their admission in evidence." *City of San Antonio v. Pollock,* 284 S.W.3d 809, 816 (Tex.2009). Accordingly, objections to the substance of summary judgment affidavits may be raised for the first time on appeal. *Yancy v. United Surgical Partners Int'l, Inc.,* 170 S.W.3d 185, 191 (Tex.App.-Dallas 2005), *aff'd,* 236 S.W.3d 778 (Tex.2007); *Brown v. Brown,* 145 S.W.3d 745, 751 (Tex.App.-Dallas 2004, pet. denied); *Wrenn v. G.A.T.X. Logistics, Inc.,* 73 S.W.3d 489, 498 (Tex.App.-Fort Worth 2002, no pet.); *see also Trusty,* 87 S.W.3d at 764. By contrast, defects in the form of summary judgment affidavits cannot constitute the basis for affirming summary judgment unless the party seeking to rely on such defects objects to those de-

fects in the trial court and obtains a ruling from the trial court or objects to the trial court's refusal to rule. *See Yancy,* 170 S.W.3d at 191; *Thompson v. Curtis,* 127 S.W.3d 446, 450 (Tex.App.-Dallas 2004, no pet.); *Lection v. Dyll,* 65 S.W.3d 696, 703 (Tex.App.-Dallas 2001, pet. denied); *Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.,* 127 S.W.3d 235, 241 (Tex.App.-Waco 2003, no pet.); *Trusty,* 87 S.W.3d at 763; *Wrenn,* 73 S.W.3d at 498.

##### ii. Expert Testimony

 "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702. In accordance with rule 702, expert testimony is admissible if (1) the expert is qualified and (2) the testimony is relevant and based on a reliable foundation. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995); *see also Cooper Tire & Rubber Co. v. Mendez,* 204 S.W.3d 797, 800 (Tex.2006); *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 499 (Tex.2001). "The party sponsoring the expert bears the burden of showing the expert's testimony is admissible." *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 578 (Tex.2006); *see also Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 720 (Tex.1998); *Robinson,* 923 S.W.2d at 556. "[N]o difference obtains between the standards for evidence that would be admissible in a summary judgment proceeding and those applicable at a regular trial." *United Blood Servs. v. Longoria,* 938 S.W.2d 29, 30 (Tex.1997).

 The reliability requirement focuses on the principles, research, and methodology underlying an expert's con-

clusions. *See Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex.2002). Scientific evidence that is not grounded in the methods and procedures of science is no more than subjective belief or unsupported speculation. *Robinson*, 923 S.W.2d at 557 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

Under Texas Rule of Evidence 703, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by, reviewed by, or made known to the expert at or before the hearing." Tex.R. Evid. 703. Texas Rule of Evidence 705, titled "Disclosure of Facts or Data Underlying Expert Opinion," provides in relevant part as follows:

> **(a) Disclosure of Facts or Data.** The expert may testify in terms of opinion or inference and give the expert's reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data.
>
> . . . .
>
> **(c) Admissibility of opinion.** If the court determines that the underlying facts or data do not provide a sufficient basis for the expert's opinion under Rule 702 or 703, the opinion is inadmissible.

Tex.R. Evid. 705 (emphasis original); *see also Choctaw Props., L.L.C.*, 127 S.W.3d at 242 (summary judgment evidence is considered "conclusory" if it does not provide underlying facts to support conclusion).

### b. Application of Law to Facts

█ In considering Mitchell's objections, we begin with his objections to the expert testimony of Powers. First, Mitchell asserts Powers's affidavit should be re-jected from consideration as summary judgment evidence because Duncan–Hubert did not designate Powers as a testifying expert witness. Duncan–Hubert responds that an alleged failure to designate expert witnesses does not constitute a substantive objection and therefore any such objection was waived by Mitchell's failure to obtain a ruling in the trial court. Failure to timely designate a testifying expert has been recognized as a defect of form to which a party must object and obtain a ruling to preserve error. *See Trusty*, 87 S.W.3d at 764. Accordingly, we conclude Mitchell's objection regarding failure to designate Powers as an expert witness has been waived. *See Thompson*, 127 S.W.3d at 450 (failure to obtain ruling on form objection constitutes waiver of that objection for purposes of appeal).

█ Second, Mitchell contends Powers failed to offer a reliable opinion. Specifically, Mitchell asserts Powers (1) acknowledges he is "unaware of the data available"; (2) qualifies that his opinion is based on the data he has available, which is limited solely to what Duncan–Hubert told him; (3) assumes Duncan–Hubert's allegations are true; and (4) opines about theoretical data and what factors would have to be analyzed if he were able to collect such data. According to Mitchell, there are "no indicia of reliability" in Powers's proffered theories and Powers's opinions "amount to nothing more than sheer speculation."

Duncan–Hubert responds that Powers's opinions are "based on a reliable methodology and reliable data." Duncan–Hubert argues that Powers "explained in detail in his affidavit why, under the facts and circumstances of the election, statistical methods could not be used to determine whether the outcome of the election would have been different in the absence of the election irregularities alleged."

█ "[W]hen a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis." *Pollock*, 284 S.W.3d at 817 (quoting *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004)). "However, when the challenge is restricted to the face of the record—for example when expert testimony is speculative or conclusory on its face—then a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility." *Id.; see also Arkoma Basin Exploration Co., Inc. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 388 (Tex.2008) (acknowledging that "some objections will fall close to the line between these categories"). Here, Mitchell specifically contends Powers's opinions "amount to nothing more than sheer speculation." Therefore, Mitchell may raise this objection for the first time on appeal. *See Pollock*, 284 S.W.3d at 817; *Arredondo v. Rodriguez*, 198 S.W.3d 236, 240 n. 2 (Tex.App.-San Antonio 2006, no pet.) (objection to speculative nature of summary judgment evidence could be raised for first time on appeal) (citing *Coastal Transp. Co., Inc.*, 136 S.W.3d at 233); *see also In re Burnett*, No. 09–09–00009–CV, 2009 WL 5205387, at *2 (Tex.App.-Beaumont Dec. 31, 2009, no pet.) (mem. op.) (appellant's complaint that analytical gaps in expert's opinion deprived opinion of probative value did not require preservation in trial court).

The record shows that, rather than stating he is "unaware of the data available," Powers testified in part in his affidavit as follows:

First, at this point there is no polling data or other data that exists that I am aware of that would enable me to conduct a statistical analysis and use statistical tests to infer whether the outcome of the election may have been different if the alleged violations not [sic] occurred. For that reason, with the existing available data, I would not be able to predict, determine, or make inferences using a statistical analysis about what the outcome of the election would have been in the absence of the alleged statutory violations.

Then, Powers (1) identified the types of data that, if collected, would enable him to address the issue of whether the outcome of the election might have been different in the absence of the alleged misleading advertisement and publication, and (2) stated that analyzing the effect of the failure to comply with notice and petition requirements "is more problematic," as such analysis would involve factors that are "very difficult if not impossible to measure." Powers described such factors in detail and identified the difficulties as to collecting and measuring the necessary data. He concluded, "Considering all of the reasons and factors addressed above, it is my opinion that from a statistical analysis standpoint, it would be impossible to predict or determine with any reasonable degree of accuracy, even with voter polling data, whether the outcome of the election would have been different [absent the alleged violations]." Mitchell does not explain or discuss how Powers's assumption that Duncan–Hubert's allegations are true affects the reliability of Powers's opinions, which do not concern, and are not offered to prove, the truth of those allegations. Based on this record, we cannot sustain Mitchell's objection regarding the reliability of Powers's opinions. *Cf. Arkoma Basin Exploration Co., Inc.*, 249 S.W.3d at 389 (concluding expert's testimony regarding his calculations was not unreliable).

█ Third, Mitchell contends Powers "did not disclose the facts or data"

underlying his opinion. In his appellate argument as to this objection, Mitchell asserts Powers (1) acknowledged that he is "unaware of the data available"; (2) qualified that his opinion is based on the available data, which is limited to what Duncan–Hubert told him; (3) did not review any documents, perform any independent collection of data, or make any attempt to verify what Duncan–Hubert told him; (4) provided "no basis whatsoever" for his proffered opinion; and (5) failed to explain the basis for his assertion that no statistical data could be collected. We construe this objection to assert that Powers's testimony is conclusory. *See Choctaw Props., L.L.C.,* 127 S.W.3d at 242 (summary judgment evidence is considered "conclusory" if it does not provide underlying facts to support conclusion). Accordingly, this objection may be raised for the first time on appeal.[5] *See Thompson,* 127 S.W.3d at 450 ("An objection that an affidavit is conclusory is an objection to the substance of the affidavit and may be raised for the first time on appeal.").

As described above, rather than stating that he is "unaware of the data available," Powers stated he is not aware of any data that would enable him to conduct a statistical analysis regarding the effect of the alleged violations. Further, we cannot agree with Mitchell that Powers provided "no basis whatsoever" for his opinion. Powers stated in his affidavit that through discussions and correspondence with Duncan–Hubert and her attorney, he had become familiar with the issues in this lawsuit, the three propositions involved, and

the violations alleged. Powers's affidavit indicates that his identification of the types of data that would be necessary to conduct an analysis regarding the election outcome was based on such alleged violations. "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by, reviewed by, or made known to the expert at or before the hearing." *See* TEX.R. EVID. 703; *see also* TEX.R. EVID. 705 ("The expert may testify in terms of opinion or inference and give the expert's reasons therefore without prior disclosure of the underlying facts or data, unless the court requires otherwise."). With respect to Powers's assumption that Duncan–Hubert's allegations are true, Mitchell does not explain or discuss how such assumption negates any basis for Powers's opinions, which do not concern, and are not offered to prove, the truth of those allegations. Finally, the record does not support Mitchell's contention that Powers failed to explain the basis for his assertion that no statistical data could be collected regarding the factors·at issue. Rather, as described above, Powers identified in detail in his affidavit the critical factors to be analyzed and considered and the difficulties in collecting the data necessary to do so. Because Powers testified regarding the facts supporting his opinion and explained how he reached that opinion, we conclude Powers's affidavit was not conclusory. *Cf. Cain v. Rust Indus. Cleaning Servs., Inc.,* 969 S.W.2d 464, 467 (Tex. App.-Texarkana 1998, pet. denied) (affidavit that sufficiently set out relevant facts and expert's conclusions based on those

---

**5.** In addition, Mitchell contends in his appellate argument regarding this objection that Powers's theory has not been peer tested or peer reviewed, nor is there any indication that his methodology enjoys wide acceptance in the community. However, Texas law requires an objection to expert testimony to be raised in the trial court if the objection requires the court to evaluate the underlying methodology or technique. *See Pollock,* 284 S.W.3d at 817; *Arkoma Basin Exploration Co., Inc.,* 249 S.W.3d at 388. Therefore, we conclude Mitchell has waived such contention. *See Pollock,* 284 S.W.3d at 817; *Arkoma Basin Exploration Co., Inc.,* 249 S.W.3d at 388.

facts was competent summary judgment proof).

■ Fourth, we address Mitchell's objection that Powers's status as an associate professor of sociology does not qualify him to present expert testimony as to election outcomes. Specifically, Mitchell argues as follows:

The majority of papers Powers co-authored concern sociological issues involving minorities and adolescents. His works also explore the effect of religious affiliation, church attendance, smoking and marital quality on societal behavior. The majority of his grants relate to aging, child health and human development. [Duncan–Hubert] has not proven that Powers is qualified to offer statistical analysis with respect to an alternative outcome to this election.

(citations to record omitted). Duncan–Hubert responds that Powers's "extensive background in applied statistics" qualifies him to undertake the task of determining whether statistical methods could be used to predict whether the outcome of the election might have been different had the alleged violations not occurred.

Mitchell's objection that Powers is not adequately qualified to opine on the subject at issue is one as to form that must be raised in the trial court. *See Adams v. State Farm Mut. Auto. Ins. Co.*, 264 S.W.3d 424, 429 (Tex.App.-Dallas 2008, pet. denied) ("An objection to an expert's qualifications must be raised in the trial court in order to preserve error."); *Sparks v. Booth*, 232 S.W.3d 853, 863 (Tex.App.-Dallas 2007, no pet.) ("A party must make a timely objection to an expert's qualifications to preserve for appeal his contention that the expert was unqualified."); *see also Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 143–44 (Tex.2004) (concluding objection to qualifications of expert witness was not preserved for appeal where not raised in trial court); *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 242 S.W.3d 67, 74 n. 4 (Tex.App.-San Antonio 2007, pet. denied) ("an objection to an expert's qualifications must be preserved by objection or it is waived") (citing *Nissan Motor Co. Ltd.*, 145 S.W.3d at 143–44).[6] Because the trial court did not rule on Mitchell's objection regarding Powers's qualifications, that objection is not preserved for our review. *See Thompson*, 127 S.W.3d at 450.

■ Mitchell asserts no other objections to Powers's affidavit. In light of the foregoing conclusions, we consider the affidavit of Powers as summary judgment evidence. *See Thompson*, 127 S.W.3d at 451; *Wrenn*, 73 S.W.3d at 499; *Well Solutions*, 32 S.W.3d at 317.

As described above, Powers opines in his affidavit that "it would be impossible to predict or determine with any reasonable degree of accuracy, even with voter polling data, whether the outcome of the election would have been different had [the alleged violations not occurred]." Based on Powers's affidavit alone, we conclude Duncan–

---

6. The case law demonstrates an objection is one addressing the substance of the testimony when the objection to the insufficiency of the expert's qualifications is combined with an objection that the expert's opinion is conclusory. *See Yancy*, 170 S.W.3d at 191 (objections that expert witnesses "were not qualified to testify regarding [patient's] condition and their statements were nothing more than unsupported conclusions" went to substance of affidavits and could be raised on appeal);

*Cain*, 969 S.W.2d at 467 (objection that affidavit did not list expert's qualifications and expert's conclusions were therefore without foundation was objection as to substance and could be raised on appeal); *cf. Trusty*, 87 S.W.3d at 765 (objection that expert's affidavit was incompetent because he was not qualified to give opinion construed as substantive objection alleging conclusory nature of affidavit).

Hubert has presented more than a scintilla of evidence to raise a material issue of fact as to the element of her claim that was the subject of Mitchell's motion for no-evidence summary judgment. *See RTLC AG Prods., Inc.,* 195 S.W.3d at 829. Accordingly, the trial court's summary judgment in favor of Mitchell was improper. *See id.* We need not address the remaining summary judgment evidence or Mitchell's objections thereto. Duncan–Hubert's two issues are decided in her favor.

### III. CONCLUSION

We conclude that the expert testimony of Powers offered by Duncan–Hubert in response to Mitchell's no-evidence summary judgment motion raised a genuine issue of material fact regarding whether irregularities in the conduct of the election render it impossible to determine the majority of the voters' true will. Accordingly, the trial court erred by granting summary judgment in favor of Mitchell. We decide in favor of Duncan–Hubert on her two issues. The trial court's judgment is reversed and this case is remanded for further proceedings consistent with this opinion.