**AFFIRM; and Opinion Filed April 28, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00404-CV

**STEVEN HOYT, INDIVIDUALLY, AND AS NEXT OF FRIEND OF MINOR CHILDREN, T.H. AND J.H., AND AS SOLE ADMINISTRATOR OF THE ESTATE OF KRISTINE HOYT, Appellants**

**V.**

**DAVID D. KIM, M.D. AND JUAN LUIS ZAMORA, M.D., Appellees**

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-16-01507-C**

## MEMORANDUM OPINION

Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Schenck

Appellants Steven Wayne Hoyt, Individually and as Next Friend of Minor Children T.L.H. and J.L.H., and as Sole Administrator of the Estate of Kristine Hoyt, appeal the trial court's orders granting no-evidence summary judgment in favor of appellees David D. Kim, M.D. and Juan Luis Zamora, M.D. in a suit appellants initiated following the death of Kristine Hoyt (Kris). While this case arises from a death allegedly related to the rendition of medical services, the only claims before us on appeal are fraud and conspiracy to commit fraud. We conclude appellants failed to present more than a scintilla of evidence of at least one essential element of these claims against these doctors. Accordingly, we affirm the trial court's orders granting summary judgment in favor of Dr. Kim and Dr. Zamora. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

On March 2, 2009, Dr. Kim performed exploratory diagnostic laparoscopic surgery on Kris at Wise Hospital due to complaints of acute abdominal pain following gastric bypass surgery the year before. Kris was thirty-seven years old at the time, and she was the wife of Steven and mother of T.L.H. and J.L.H. During the surgery, a nurse anesthetist, under the supervision of anesthesiologist Jason R. Schuh, M.D., administered intravenous general anesthesia to Kris. The anesthesia and/or muscle relaxants administered to Kris allegedly did not adequately sedate her and, according to Dr. Kim, she began "bucking" when he inserted a bladeless trocar into her right abdominal cavity. While the parties argue over the exact sequence of events, it is clear that Kris had been on the operating table and under the effects of anesthesia for some time when the procedure began. Dr. Kim testified that at some point during the procedure she "bucked," perhaps due to the waning effect of anesthesia, causing the severance of her abdominal aorta. Complications followed Dr. Kim's efforts to repair the aorta, and Kris developed disseminated intravascular coagulopathy and died on the operating room table.

Dr. Kim informed Steven of Kris' death. He told Steven that even though the Justice of the Peace had declined an inquest, an autopsy was still an option, although Dr. Kim did not think it was necessary because he knew the cause of death. Steven advised Dr. Kim and Dr. Schuh that he wanted an autopsy performed.

Dr. Kim notified hospital management of Steven's desire to have an autopsy performed. Hospital management contacted Autopsy Associates of North Texas ("Autopsy Associates") to arrange for the autopsy. Autopsy Associates assigned the case to Dr. Zamora.

On or after March 2, 2009, and prior to March 4, 2009, Dr. Kim dictated his initial post-operative report. On March 4, 2009, Dr. Kim dictated a second operative report after a hospital medical records department employee notified him that he could not locate Dr. Kim's initial dictation. In that second report, Dr. Kim included a post-operative diagnosis of trocar related

injury of the distal aorta, and indicated that the trocar created a maceration type of injury. In the procedure portions of his second report, Dr. Kim indicated: more than 50% of a very small aortic surface was injured by the trocar; when he could clearly examine the injury that had occurred, he observed a small macerated tear of the distal aorta created by the bladeless trocar tip; he had to resect the distal portion of the tortuous aorta because of the damage created by the trocar; and an unfortunate bucking at the exact time of the trocar insertion along with other factors were the components that led to the aortic injury.

On the morning of March 6, 2009, Dr. Zamora verbally communicated the preliminary results of the autopsy to Dr. Kim. Later that day, at approximately 2:30 p.m., Dr. Zamora transmitted his preliminary report by facsimile to the hospital and Dr. Kim. Dr. Zamora's preliminary report attributed Kris' death to a spontaneous dissection of the aorta and referenced the use of a flexible catheter, rather than a bladeless trocar, which is a rigid instrument. On that same day, Dr. Kim made hand-written changes to his operative report, deleting most of the references to a trocar injury, and adding "[a]t the time of this dictation, the findings at autopsy were not available."[1]

On April 27, 2009, Dr. Zamora issued his final report and notified Steven that, in his opinion, Kris died of "Dissecting Aneurysm of the Aorta" and that microscopic sections of the aorta showed changes that are consistent with a degenerative vascular disease known as Erdheim's Medial Degeneration. After receiving Dr. Zamora's autopsy report, which conflicted with what Dr. Kim had told Steven, appellants arranged for pathologist Michael Baden, M.D. to perform a second autopsy. Dr. Baden performed the second autopsy on June 10, 2009. He

---

[1] Dr. Kim's final report included the following comment:

"I could not explain how a blunt trocar could injure the aorta. I explained to Mr. Hoyt insertion of a trocar in the right lateral aspect of the abdomen seemed like an unlikely possibility to the cause of a ruptured aorta. Without autopsy, I could not come up with any other explanation for aortic rupture. The same visualized method of insertion into the same trocar sites was used just 1 year ago. I found an unusual aorta that was tortuous. An unfortunate bucking at the exact time of the trocar insertion along with the above-stated factors were possible factors that led to this aortic injury."

concluded Kris died from massive internal hemorrhage caused by an inadvertent perforation of the aorta during the laparoscopic procedure, not as the result of a preexisting degenerative vascular disease. This conclusion is consistent with the explanation Dr. Kim gave to Steven immediately following Kris' death.

Appellants sued several individuals and the anesthesia group alleging claims of negligence causing Kris' death and/or participation in a subsequent cover-up regarding the cause of her death.[2] With respect to Dr. Kim and Dr. Zamora, appellants did not allege any acts of negligence that caused Kris' death. Rather, they alleged Dr. Kim and Dr. Zamora participated in a post-mortem fraud consisting of a cover-up of the true cause of Kris' death.

The trial court granted Dr. Kim's and Dr. Zamora's no-evidence motions for summary judgment.[3] Appellants filed a Motion for New Trial or Motion for Reconsideration through which appellants attempted to introduce additional summary judgment evidence.[4] The trial court denied the motion.[5] Thereafter, the trial court severed appellants' claims against Dr. Kim and Dr. Zamora from those against the remaining defendants making its summary judgment orders final. This appeal followed.

### STANDARD OF REVIEW

We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–

---

[2] In addition to Dr. Kim and Dr. Zamora, appellants sued anesthesiologist Dr. Schuh, and nurse anesthetist Sarah Kruse, C.R.N.A. claiming they were negligent and grossly negligent in providing anesthesia care to Kris, resulting in her death. Appellants also sued Dr. Schuh's and nurse Kruse's employer, Northstar Anesthesia, P.A., asserting it is liable for their actions. Appellants allege that due to light or inadequate anesthetic depth, Kris "bucked" in pain when Dr. Kim inserted a trocar into her abdomen causing the trocar to sever Kris' abdominal aorta and caused rapid and profuse bleeding, leading to Kris' death.

[3] In its written orders granting summary judgment, the trial court did not specify the bases for its decisions. During the hearing on appellants' motion for new trial, the trial court noted appellants' never relied on Dr. Kim's statements. On appeal, we may rely on any ground stated in the motion for summary judgment, regardless of whether the trial court identified the ground relied on to grant the summary judgment. *Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). Thus, we are not limited to considering reliance as a ground for summary judgment in favor or Dr. Kim on appellants' fraud claim.

[4] Evidence presented after the grant of summary judgment is irrelevant to an appellate court's review of the summary judgment. *Triton 88 L.P. v. Star Electricity L.L.C.*, 411 S.W.3d 42, 54 n.1 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

[5] On appeal, appellants do not complain about the denial of their motion for new trial.

51 (Tex. 2003); *Pollard v. Hanschen*, 315 S.W.3d 636, 638 (Tex. App.—Dallas 2010, no pet.). The moving party must file a motion that specifies which elements of the nonmoving party's claim lack supporting evidence. TEX. R. CIV. P. 166a(i); *Thomas v. Omar Investments, Inc.*, 129 S.W.3d 290, 293 (Tex. App.—Dallas 2004, no pet.). Once a proper motion is filed, the burden shifts to the nonmoving party to present evidence raising any issues of material fact. *Pollard*, 315 S.W.3d at 638. We examine the record in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *King Ranch*, 118 S.W.3d at 750–51.

A no-evidence summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged elements. TEX. R. CIV. P. 166a(i); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). The respondent is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a(i) cmt.–1997; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

## DISCUSSION

In two issues, appellants contend the trial court erred in granting Dr. Kim's and Dr. Zamora's no-evidence summary judgments because appellants' summary judgment evidence raised fact issues on the challenged elements of their fraud and conspiracy to commit fraud claims.[6]

---

[6] On appeal, appellants do not challenge the trial court's dismissal of their intentional infliction of emotional distress claims. In their live pleading, appellants requested a jury instruction on spoliation of evidence. Spoliation is not a recognized cause of action and will not be further addressed in this opinion. *Trevino v. Ortega*, 969 S.W.2d 950, 951 (Tex. 1998). We limit our review and discussion to appellants' fraud and conspiracy to commit fraud claims.

Dr. Kim's no-evidence motion for summary judgment recited the elements of appellants' fraud and conspiracy to commit fraud claims, and asserted appellants could not provide any evidence to support each and every element of those claims. Dr. Zamora's motion asserted appellants could not provide any evidence of each element of their fraud claim other than damages.[7] As to appellants' conspiracy to commit fraud claim, Dr. Zamora asserted appellants could not provide any evidence of fraud, or that the defendants acted together and had a meeting of the minds.

Applying the standard of review, we note that in order to defeat the no-evidence motions for summary judgment, appellants had to bring forth evidence sufficient to raise a genuine issue of material fact on every challenged element of each of its causes of action. *RTLC AG Prods., Inc. v. Treatment Equip. Co.*, 195 S.W.3d 824, 833 (Tex. App.—Dallas 2006, no pet.).[8]

## I.      Fraud Claims

### A.  Dr. Kim.

Appellants claim Dr. Kim committed fraud by altering his operative report to align with Dr. Zamora's findings, and by misrepresenting (1) he knew the cause of Kris' death, (2) the necessity of an autopsy, and (3) the Justice of the Peace had been contacted and declined an inquest.

---

[7] Because we dispose of appellant's fraud claim against Dr. Zamora for lack of evidence of reliance, we need not determine whether Dr. Zamora's statement "[t]he final elements, if a court were to ever reach them, which is doubtful, would also fail at this time" was sufficient to present a challenge to the damage element of appellants' fraud claim, as Dr. Zamora urges.

[8] On appeal, appellants reference records and deposition testimony attached to their petition. The petition and its attachments are not attached to appellants' responses to Dr. Kim's and Dr. Zamora's no-evidence motions for summary judgment. Supporting proof in response to a motion for summary judgment must be attached to the response and not to the pleadings. *Tex. Nat'l. Corp. v. United Sys. Int'l, Inc.*, 493 S.W.2d 738, 741 (Tex. 1973). In addition, appellants reference evidence presented with their motion for new trial. Evidence presented after the grant of summary judgment is generally irrelevant to an appellate court's review of the summary judgment. *Triton*, 411 S.W.3d at 54 n.1. Consequently, in considering appellants' issues we will consider the evidence presented with the respective responses to the no-evidence motions for summary judgment only and excerpts of deposition testimony presented by Dr. Kim in reply for purposes of optional completeness. TEX. R. EVID. 107. In some instances appellants rely on summary judgment evidence attached to their response to Dr. Zamora's no-evidence motion for summary judgment to argue a fact issue exists as to their claims against Dr. Kim. We do not consider the evidence raised by appellants in response to Dr. Zamora's no-evidence motion for summary judgment when reviewing Dr. Kim's separate and independent no-evidence summary judgment motion. *See Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 748 n.6 (Tex. App.—El Paso 2013, no pet.).

### 1. False Representation

As to Dr. Kim's representation of the cause of Kris' death, the record shows Dr. Kim told Steven that he believed Kris died from a trocar-related injury.[9] Dr. Kim indicated that, although he did not understand the mechanism of how that could have happened, it was the only explanation he had. To prove an action for fraud, appellants had to prove that this representation was false. *See Aquaplex, Inc. v. Rancho La Valencia*, 297 S.W.3d 768, 774 (Tex. 2009).

In their lawsuit, appellants have adopted Dr. Kim's explanation of the cause of Kris' death, as confirmed by the autopsy findings of their pathologist, Dr. Baden, to assert negligence claims against other healthcare providers.[10] Consequently, appellants have judicially admitted that Dr. Kim's explanation as to the cause of Kris' death was correct. *See Murphy v. Williams*, 430 S.W.3d 613, 618 (Tex. App.—Dallas 2014, pet. denied) (a judicial admission is conclusive upon the party making it and bars the admitting party from disputing it). Thus, appellants produced no evidence that Dr. Kim made any false representation to them as to the actual cause of Kris' death.

Appellants also claim that Dr. Kim made a false representation by stating the Justice of the Peace had been contacted and declined an inquest. Viewed in the light most favorable to appellants as non-movants, the evidence does reflect conflicting testimony between Drs. Kim and Schuh, such that a factfinder might conclude that a misrepresentation occurred. Appellants presented some evidence the Justice of the Peace had not been contacted or given an opportunity to conduct an investigation. Dr. Kim testified that Dr. Schuh had spoken with the Justice of the

---

[9] Appellants take issue with Dr. Kim revising his operative report to align with Dr. Zamora's autopsy findings, but concede that they do not allege that the operative reports constitute fraudulent misrepresentations made to them and could not have caused injury prior to their discovery of it in connection with pre-trial proceedings in this lawsuit. A claim of fraud requires proof that the defendant make a representation to the plaintiff. *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 507 n.28 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Thus, Dr. Kim's draft and final operative reports were not representations to appellants, and thus, they cannot support a fraud claim.

[10] In appellants' live pleading, appellants asserted "Kris' death was caused by the perforations to her aorta caused by the trocar. . . ." and claimed Dr. Schuh and Nurse Kruse's negligence "resulted in Kris' violent movement, or 'bucking,' which directly contributed to cause her untimely death."

Peace and relayed his decision not to conduct an investigation. Dr. Schuh testified denying contacting the Justice of the Peace at all. An affidavit from the Justice of Peace indicated he had no records concerning Kris. Consequently, appellants raised a fact issue as to a misrepresentation concerning the availability of an autopsy through the Justice of the Peace.

### 2. Justifiable Reliance

To prevail in a claim of fraud the plaintiff must show both actual and justifiable reliance on any alleged misrepresentation. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). Appellants assert that due to Dr. Kim's false representation that the Justice of the Peace had declined an investigation into Kris' death and representation he did not believe an autopsy was necessary, they entrusted all further investigation into the cause of Kris' death to Dr. Kim and Dr. Schuh.

Appellants contend the following testimony by Steven raises a fact issue as to this purported reliance.

> I've never had to be in that position, so I had no idea what to do next, and so we had conversations about those next steps for me. . . . Information was what I was looking for, and I wanted to have an autopsy done so we could establish, you know, what happened. Dr. Kim was adamant that it wasn't necessary, because he knew for sure what the causes of death were. He had just explained them, but if I wanted to have one, I could certainly do that, and he was unsure of the policies of that hospital on what had to happen. Dr. Schuh offered information, because he was more familiar with those, and I decided to go ahead and have an autopsy done.

This testimony does not raise a fact issue as to reliance. This testimony establishes that, notwithstanding Dr. Kim's representation that an autopsy was not necessary, Steven decided to proceed with an autopsy anyway. In this respect, the testimony is consistent with appellants' pleading averment that "Kim and Schuh's misrepresentations about the need for an autopsy did not deter Steven Hoyt from requesting that an autopsy be conducted to determine the actual cause of his wife Kris' untimely death . . . ." Thus, the record reflects no genuine fact issue with

–8–

respect to whether appellants relied on Dr. Kim's representation concerning the need for an autopsy.

As to appellants' assertion that due to the representation concerning the lack of an autopsy via the Justice of the Peace, appellants entrusted all further investigation into Kris' death to Dr. Kim and Dr. Schuh, appellants presented no evidence to substantiate this assertion. To the contrary, their concerns over Dr. Kim's veracity and handling of his post-operative report were such that they felt the need, first, to have an autopsy conducted and thereafter to insist on a second autopsy. Moreover, the summary judgment evidence establishes Dr. Kim's involvement in arranging for the autopsy was limited to calling hospital management to report that Steven wanted an autopsy performed. There is no evidence appellants sought an autopsy through a particular source only to be steered in a different direction by Dr. Kim.

The record shows Steven was concerned about who was going to pay for the autopsy and that once he received Dr. Zamora's report he hired counsel and obtained a second autopsy and proceeded on that basis. Consequently, appellants failed to raise a fact issue as to justifiable reliance on a representation by Dr. Kim concerning the need for an autopsy and availability of an autopsy through the Justice of the Peace.

Appellants' reliance on *Prize Energy Resources, L.P. v. Cliff Huskins, Inc.*, 345 S.W.3d 537 (Tex. App.—San Antonio 2011, no pet.) for the proposition that just because they decided to investigate Kris' death after receiving Dr. Zamora's report does not negate their reliance on the statements made by Dr. Kim and Dr. Zamora at the time they were made, is misplaced. In *Prize Energy*, Bank of America, acting as trustee for a trust that owned an interest in an oil and gas lease, ratified the lease based upon the lessee's false assurances that the lease had not terminated because there had been no cessation of production (due to flaring). Thus, Bank of America relied on the lessee's false representations when it ratified the lease. Subsequently, Bank of

America learned the lessee's representations were false and asserted, had it know the truth, it would not have ratified the lease and would have negotiated a higher royalty payment. In finding a fact issue existed precluding summary judgment in favor of the lessee, the court of appeals noted a party's knowledge of falsity before or at the time of reliance is the only relevant inquiry in a fraud claim; knowledge gained after the fact cannot vitiate the fraud. *Id.* at 583. In other words, the fact that Bank of America later learned that flaring was not production, did not vitiate its reliance on the lessee's representations about production when it ratified the lease. Unlike Bank of America, appellants did not follow Dr. Kim's recommendation that an autopsy not be performed. Rather, they insisted on one in spite of their communications with Dr. Kim. While appellants were waiting the results of an autopsy, there could be no reliance and the evidence establishes that when appellants received Dr. Zamora's autopsy findings, they did not believe him and pursued another autopsy by the pathologist of their choice.

### 3. Damages

A plaintiff suing for fraud must also bring forward proof of actionable injury as an element of the claim. *Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 963 (Tex. App.—Dallas 2013, no pet.). Appellants, however, presented no evidence of damages in response to Dr. Kim's motion for summary judgment. They merely argued they were deprived of the opportunity for an impartial third party to investigate the cause of Kris' death. As noted above, appellants insisted on proceeding with an autopsy despite any urging from Dr. Kim and, thereafter, hired Dr. Baden to perform the second autopsy. There is no evidence that any act or omission of Dr. Kim impacted Dr. Baden's ability to perform the autopsy and to reach his conclusion as to the cause of Kris' death. Indeed, the only injury appellants identify after receipt of the Baden autopsy report is one for emotional distress of T.H. and J.H., said to be caused by a lack of certainty of the cause of their mother's death. Putting aside the difficulties with reliance detailed

–10–

above, the appellants offered no evidence in response to the summary judgment that would allow a reasonable factfinder to associate the children's emotional trauma with a delay or uncertainty as to the cause of death from the trauma of the death itself.

A trial court must grant a no-evidence summary judgment motion if the non-movant does not produce evidence raising a fact issue on a challenged element. TEX. R. CIV. P. 166a(i); *see RTLC AG Products*, 195 S.W.3d at 832. Therefore, we conclude summary judgment was proper as to Dr. Kim's no-evidence motion for summary judgment on appellants' fraud claim. We overrule appellants' first issue as to their fraud claim against Dr. Kim.

B. Dr. Zamora

Appellants claim Dr. Zamora committed fraud by misrepresenting Kris' cause of death in his autopsy report. Appellants recognize that the relevant time for examining whether their reliance was justifiable was when Dr. Zamora issued his report. *Grant Thornton LLP*, 314 S.W.3d at 923. Appellants produced no evidence they relied on Dr. Zamora's autopsy report. To the contrary, the summary judgment evidence establishes appellants did not rely on Dr. Zamora's autopsy conclusions and instead commissioned an autopsy through Dr. Baden, which confirmed what Dr. Kim told Steven on the date of Kris' death.

We conclude appellants did not bring forth more than a scintilla of probative evidence that they relied on Dr. Zamora's autopsy and conclusions as to the cause of Kris' death. A trial court must grant a no-evidence summary judgment motion if the non-movant does not produce evidence raising a fact issue on a challenged element. TEX. R. CIV. P. 166a(i); *see RTLC AG Products*, 195 S.W.3d at 832. Therefore, we conclude summary judgment was proper as to Dr. Zamora's no-evidence motion for summary judgment on appellants' fraud claim. We overrule appellants' second issue as to their fraud claim against Dr. Zamora.

–11–

II.     Conspiracy Claims

A claim of conspiracy requires proof that (1) two or more persons; (2) had an object to be accomplished, whether an unlawful purpose or a lawful purpose by unlawful means; (3) with a meeting of the minds on the object or course of action; (4) with one or more unlawful, overt acts; and (5) with damages proximately resulting. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Conspiracy is a derivative tort because a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *W. Fork Advisors, LLC v. SunGard Consulting Serv.*, 437 S.W.3d 917, 920 (Tex. App.—Dallas 2014, pet. denied). Without an underlying tort, there can be no independent liability for civil conspiracy. *Id.*; *AFE Oil & Gas, L.L.C. v. Hess*, No. 05-07-01564-CV, 2009 WL 294828, at *4 (Tex. App.—Dallas Feb. 9, 2009, no pet.) (mem. op.) ("if no defendant is liable for fraud, then no defendant can be liable for conspiracy to commit fraud").

1.      Unlawful Act

Appellants urge that the underlying object of the conspiracy was the commission of fraud against appellants, specifically Dr. Kim's changes to his operative report to reflect Dr. Zamora's allegedly false, unsupported conclusions. As appellants concede and we have previously determined, *Supra* n.9, Dr. Kim's draft and operative reports cannot be a basis for a fraud claim because they were not representations to appellants. The changes to his reports cannot support conspiracy to commit fraud claims against Dr. Kim or Dr. Zamora.

2.      Damages

Moreover, as to appellants' conspiracy to commit fraud claim, Dr. Kim challenged the essential element of damages. Appellants concede that in order to succeed on a conspiracy to commit fraud claim, they have to prove damages caused by Dr. Kim's underlying fraudulent

misconduct.  *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).  As we have previously noted appellants failed to present any evidence of damage.

We conclude appellants did not bring forth more than a scintilla of probative evidence of an underlying tort and of any damages resulting from Dr. Kim's alleged conspiracy to commit fraud.  A trial court must grant a no-evidence summary judgment motion if the non-movant does not produce evidence raising a fact issue on a challenged element.  TEX. R. CIV. P. 166a(i); *see RTLC AG Products*, 195 S.W.3d at 832.  Therefore, we conclude summary judgment was proper as to Dr. Kim's and Dr. Zamora's no-evidence motion for summary judgment on appellants' conspiracy to commit fraud claims.   We overrule appellants' first and second issues as to their conspiracy to commit fraud claims against Dr. Kim and Dr. Zamora.

## CONCLUSION

The trial court did not err in granting Dr. Kim's and Dr. Zamora's no-evidence motions for summary judgment.  We affirm the trial court's summary judgment orders dismissing all claims appellants asserted against Dr. Kim and Dr. Zamora.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

160404F.P05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVEN HOYT, INDIVIDUALLY, AND
AS NEXT OF FRIEND OF MINOR
CHILDREN, T.H. AND J.H., AND AS
SOLE ADMINISTRATOR OF THE
ESTATE OF KRISTINE HOYT, Appellants

On Appeal from the County Court at Law
No. 3, Dallas County, Texas
Trial Court Cause No. CC-16-01507-C.
Opinion delivered by Justice Schenck.
Justices Lang and Fillmore participating.

No. 05-16-00404-CV        V.

DAVID D. KIM, M.D. AND JUAN LUIS
ZAMORA, M.D., Appellees

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee DAVID D. KIM, M.D. AND JUAN LUIS ZAMORA, M.D. recover their costs of this appeal from appellant STEVEN HOYT, INDIVIDUALLY, AND AS NEXT OF FRIEND OF MINOR CHILDREN, T.H. AND J.H., AND AS SOLE ADMINISTRATOR OF THE ESTATE OF KRISTINE HOYT.

Judgment entered this 28th day of April, 2017.

–14–