

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00283-CV

Christopher J. **YARBROUGH**,
Appellant

v.

Gary Lynn **MCCORMICK** d/b/a Guadalupe River Club Oyster Bar & Grill,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. 12148A
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Marialyn Barnard, Justice
Concurring & Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: June 27, 2018

AFFIRMED

Appellant Christopher J. Yarbrough challenges the trial court's summary judgment in favor

of appellee, Gary Lynn McCormick d/b/a Guadalupe River Club Oyster Bar & Grill ("GRC").  On

appeal, Yarbrough argues the trial court erred in granting GRC's objections to certain summary

judgment evidence and in granting summary judgment in favor of GRC because he produced more

than a scintilla of evidence showing GRC violated the Texas Dram Shop Act by serving alcohol

to an obviously intoxicated person and encouraging over-service.  We affirm the trial court's

judgment.

**BACKGROUND**

This case arises out of an automobile collision involving Yarbrough and James Ryan Birkes. On the night of the accident, Yarbrough was driving his motorcycle when he collided with Birkes, who failed to yield the right of way and turned left in front of oncoming traffic. Unable to stop, Yarbrough crashed into Birkes's vehicle, fell from his motorcycle, and was run over by Birkes. Thereafter, Birkes backed up and ran over Yarbrough a second time before fleeing the accident.

The record reflects that prior to the accident, Birkes and a friend, Adam Moran, met each other around 6:00 or 6:30 p.m. for a night of barhopping. They started their evening at The Brown Hen, Inc. d/b/a Fritzer's Saloon ("Fritzer's Saloon"), where they began drinking beer and mixed drinks. According to Birkes's deposition testimony, he and Moran had approximately three or four pitchers of beer and four mixed drinks between them. Around 7:45 p.m., they left and went to GRC, where they split another pitcher of beer and three mixed drinks. By 9:00 p.m., they returned to Fritzer's Saloon and shared one to two pitchers of beer and two more mixed drinks. At 11:00 p.m., they decided to leave Fritzer's Saloon and drive to Ole Ingram Social Club, where they were refused service. They decided to return to GRC, where they ordered a pitcher of beer. According to Birkes, he and Moran sat on the deck for approximately an hour and a half, and he had only one beer from the pitcher. By midnight, Birkes decided he wanted to leave; Moran gave him the keys to the truck. Thereafter, the accident ensued.

Yarbrough filed suit against GRC, asserting claims under the Texas Dram Shop Act as well as claims for common law negligence, gross negligence, and criminal negligence.[1] *See* TEX.

---

[1] Yarbrough also filed suit against Birkes and Moran, asserting claims for negligence, and Fritzer's Saloon, asserting the same claims as those brought against GRC. The trial court granted summary judgment in favor of Fritzer's Saloon. After granting summary judgment in favor of Fritzer's Saloon and GRC, the trial court rendered an order of severance, severing the action against Fritzer's Saloon and GRC from the action against Birkes and Moran. This made the summary judgments in favor of Fritzer's Saloon and GRC final and appealable. However, in his notice of appeal,

ALCO. BEV. CODE ANN. § 2.02(b) (West 2007). Yarbrough specifically asserted GRC "provided, sold, or served an alcoholic beverage to [Birkes] at a time when it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to [him]self and others." Yarbrough further alleged Birkes's intoxication was the proximate cause of the accident and his resulting injuries.

Thereafter, GRC filed a traditional and no-evidence motion for summary judgment, asserting it was entitled to summary judgment on Yarbrough's dram shop claim as a matter of law based on the "trained server" exception. Under the exception, if an employee over-serves a patron, his actions "shall not be attributable to the employer" so long as the employer requires its employees to attend certain training classes, the employee in question actually attends those classes, and the employer does not encourage its employees to violate the law. *See id*. 106.14(a). GRC further asserted Yarbrough's common law negligence, gross negligence, and criminal negligence claims were barred because the Texas Dram Shop Act provides the exclusive cause of action against commercial providers of alcoholic beverages. *See id*. 2.03(a).

As summary judgment evidence, GRC attached a portion of the deposition testimony from Terry McCormick, one of the owners of GRC, as well as affidavits from McCormick and Krystin Broussard, one of GRC's servers. The summary judgment evidence established the following employees were working on the night of the incident: (1) servers — Broussard and Alexis Habeeb, and (2) bartenders — Matt Reeves and David Franks. According to McCormick, these employees had completed seller-server training, had been certified, and their certifications were current on the night of the accident. McCormick further testified GRC was a licensed provider and required

---

Yarbrough specifically stated he sought to appeal the judgment in favor of GRC; the notice of appeal does not mention Fritzer's Saloon. Accordingly, the only parties to this appeal are Yarbrough and GRC.

its employees to attend a Texas Alcoholic Beverage Commission ("TABC") approved seller-training program. Copies of GRC's TABC license and its employees' training certificates were also attached to GRC's motion.

Yarbrough filed a response to GRC's motions for summary judgment, arguing the evidence attached thereto established GRC served alcohol to an obviously intoxicated person, i.e., Birkes, and encouraged its employees to over-serve customers. Specifically, Yarbrough submitted a portion of a presuit deposition from Birkes, who testified about the bars he went to on the night of the accident and how much he drank at each bar, including GRC. Yarbrough also submitted a portion of a presuit deposition from Lisa Miller Broderick, a regular patron of both Ole Ingram Social Club and GRC, who testified GRC had a reputation for over-serving patrons. Broderick described GRC as "the place to go" if you wanted to get drunk. Yarbrough also produced portions of a presuit deposition from Collin Jones, the owner of Ole Ingram Social Club, which refused to serve Birkes. Jones testified Birkes was "swaying" when he walked into Ole Ingram Social Club, and he had "no doubt whatsoever" that Birkes was too drunk to serve. Jones further testified he told Birkes he was not going to get served that night. In addition, Yarbrough attached an affidavit from Dr. Ambrose Charles, who reviewed Birkes's deposition. According to Dr. Charles, based on Birkes's level of intoxication and the time span between Birkes's visit to Ole Ingram Social Club and GRC, it would have been highly likely that Birkes exhibited the same type of symptoms at GRC as he did at Ole Ingram Social Club.

GRC filed objections to Yarbrough's summary judgment evidence, arguing it did not receive notice of, nor was it given an opportunity to attend, the presuit depositions of Broderick and Jones. GRC further objected to specific portions of the presuit depositions of Broderick and Jones, asserting the testimony was adduced through leading questions and portions of the

testimony were hearsay.[2]  Although the trial court denied GRC's objections regarding lack of notice, it granted GRC's objections to the form of particular questions.

The trial court ultimately granted summary judgment in favor of GRC without stating the basis for its judgment.  Thereafter, Yarbrough perfected this appeal, challenging the summary judgment in favor of GRC.

## ANALYSIS

On appeal, Yarbrough raises three issues challenging the trial court's order granting summary judgment in favor of GRC.  In his first issue, Yarbrough contends the trial court erred in granting GRC's objections to certain summary judgment evidence, thereby excluding such evidence.  According to Yarbrough, the exclusion of such evidence was harmful error.  In his last two issues, Yarbrough argues the trial court erred in granting summary judgment in favor of GRC because there was more than a scintilla of evidence to show (1) GRC served alcohol to an obviously intoxicated person and (2) GRC encouraged over-service.

### *Objections to Summary Judgment Evidence*

We begin by determining whether the trial court erred in granting GRC's objections to certain portions of Yarbrough's summary judgment evidence, and in the event its ruling was error, whether such error was harmful.  As indicated above, the trial court granted GRC's objections to certain portions of the presuit depositions of Broderick and Jones on the basis that the testimony was adduced by leading questions and portions of the testimony were hearsay.  As a result of the trial court's ruling, the majority of Broderick's deposition testimony was excluded, and portions

---

[2] GRC also objected to Dr. Charles's affidavit on the basis that the affidavit failed to establish the identity of the affiant, did not comply with Rule 166a(f) of the Texas Rules of Civil Procedure because it referenced another affidavit which was not attached, and the opinions set out by Dr. Charles were conclusory and unreliable.  The trial court took the objection under advisement, but never ruled on it.  Dr. Charles's affidavit and its admissibility are ultimately irrelevant to our disposition.

of Jones's testimony, which described Birkes as an alcoholic and stated it was obvious he was drunk, were excluded.

In his brief, Yarbrough begins his argument by urging this court to consider the excluded evidence, arguing GRC waived its objections to the form of his summary judgment evidence because GRC failed to obtain a written ruling from the trial court. Yarbrough further argues should we hold the trial court entered a written ruling on GRC's objections, then the trial court abused its discretion by excluding the evidence on the basis of form defects because it did not make a finding of prejudice. According to Yarbrough, absent a finding of unfair prejudice or abuse of Rule 202.5 of the Texas Rules of Civil Procedure, "the [trial] court must overrule all form and leading objections."

Turning to Yarbrough's contention that GRC's objections are waived because the trial court did not enter a written ruling, we disagree. "To preserve objections to the form of summary-judgment evidence for appeal, a party asserting the objections must obtain a ruling at or before the summary judgment hearing." *Williams v. Bad-Dab, Inc.*, No. 01-11-00102-CV, 2012 WL 3776347, at *6 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op.) (citing *Vice v. Kasprzak*, 318 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); TEX. R. APP. P. 33.1(a)(1); TEX. R. CIV. P. 166a(f)). Pertinent to this case, objections to leading questions and hearsay are defects in form, and thus, require a ruling for appellate review. *Williams,* 2012 WL 3776347, at *6 (stating objection to hearsay is defect in form)*; Ordonez v. M.W. McCurdy & Co*., 984 S.W.2d 264, 274 (Tex. App. 1998) (specifying objections to question as leading is an objection to form). The party objecting to summary judgment evidence bears the burden to obtain a ruling on that party's objections. *Duncan-Hurbert v. Mitchell*, 310 S.W.3d 92, 99 (Tex. App.—Dallas 2010, pet. denied). One way the burden is satisfied is if the record affirmatively indicates the trial court ruled on the objections. *Id.*

Here, at the summary judgment hearing, GRC filed written objections to portions of Broderick's and Jones's presuit deposition testimony. In its written filing, GRC specified which portions of deposition testimony it objected to by referencing the location of the testimony by page and line numbers. Next to each objection, the trial judge noted "Denied" or "G," and handwrote the phrase "Ordered as noted & Bench filed 2-23-2016" on the first page of GRC's written objections. The phrase was followed by the trial judge's signature. Based on this record before us, we conclude the record affirmatively demonstrates the trial court ruled on each of the objections by writing its ruling next to each objection and including the phrase "Ordered as noted" along with the judge's signature. *See id*.

Yarbrough contends, however, the judge's notations of "Denied" or "G" are insufficient to constitute a written ruling, comparing the notations to a docket sheet entry, which are not written rulings. *See In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("Entries made in a judge's docket are not accepted as a substitute for that record. The order must be reduced to writing, signed by the trial court, and entered in the record."). Contrary to Yarbrough's contention, the judge's notations are not entries to the docket sheet, but rather are written rulings to each objection set forth by GRC. *See id.* Moreover, the rulings are signed by the trial court. *See id.* Thus, the filing itself affirmatively demonstrates the trial judge's rulings. *See Mitchell*, 310 S.W.3d at 99. Accordingly, because we conclude GRC secured a written ruling as to each of its objections to the deposition testimony of Broderick and Jones, we hold GRC did not waive its objections.

Yarbrough next contends the trial court abused its discretion in granting GRC's form objections to portions of Broderick's and Jones's deposition testimony because at no point did it find unfair prejudice or abuse of Rule 202.5 of the Texas Rules of Civil Procedure. Yarbrough argues "[a]fter finding there was no unfair prejudice and ample time to depose the parties, the court

must overrule all form and leading questions." For support, Yarbrough cites Rule 202.5, arguing the rule provides "the only standard for excluding the presuit depositions," and under the rule, a trial court may restrict use of a deposition only if a finding of unfair prejudice or abuse is entered.

We review a trial courts ruling to an objection to summary judgment evidence for an abuse of discretion. *Browne v. City of San Antonio*, No. 04-11-00219-CV, 2012 WL 11756, at \*2 (Tex. App.—San Antonio Jan. 4, 2012, pet .denied) (mem. op.). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules or principles. *Id.* "Merely because a trial court may decide a discretionary matter differently than the appellate court does not demonstrate an abuse of discretion." *Id.* Even if a trial court errs in excluding summary judgment evidence, reversal can be obtained only if the appellant establishes the error was calculated to cause and probably did cause the rendition of an improper judgment. *Doncaster v. Hernaiz*, 161 S.W.3d 594, 601 (Tex. App.—San Antonio 2005, no pet.); TEX. R. APP. P. 44.1(a).

Rule 202.5 of the Texas Rules of Civil Procedure provides that a trial court "may restrict or prohibit the use of a deposition taken under this rule in a subsequent suit to protect a person who was not served with notice of the deposition from any unfair prejudice or to prevent abuse of this rule." *See* TEX. R. CIV. P. 202.5. According to Yarbrough, because the trial court denied GRC's objections that it did not receive notice of Broderick's or Jones's presuit depositions, the trial court essentially found there was no unfair prejudice or abuse of Rule 202.5. Therefore, "the court must overrule all form and leading objections." However, Yarbrough's reliance on Rule 202.5 is misplaced. Although Rule 202.5 provides that a trial court *may* restrict use of a deposition in the event a party was not served with notice, the rule is permissive. *See Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 442 (Tex. 2011) (describing "may" language as permissive).

Moreover, nowhere in the rule does it require a trial court to overrule all form and leading objections to presuit depositions absent a finding of unfair prejudice or abuse of the rule. Rule

202.5 speaks to the exclusion of the entire presuit deposition. *See* TEX. R. CIV. P. 202.5. In this case, the trial court did not exclude the entire deposition. Instead, the trial court excluded portions of the depositions by sustaining specific objections made during the depositions to leading questions and hearsay answers. Except for his reliance on Rule 202.5, Yarbrough does not cite any authority, nor have we found any, in support of his position that Rule 202.5 requires the trial court to overrule GRC's objections. Other than his argument under Rule 202.5, Yarbrough does not challenge the trial court's rulings on the specific objections. Accordingly, we overrule Yarbrough's first issue, holding the trial court did not abuse its discretion when excluding specific portions of Broderick's and Jones's deposition testimony.

### *Summary Judgment*

We now turn our attention to determining whether the trial court erred in granting summary judgment in favor of GRC based on the summary judgment evidence that was not excluded by the trial court's sustaining of GRC's objections. As indicated above, GRC filed a traditional and no-evidence motion for summary judgment, asserting it was entitled to summary judgment on Yarbrough's dram shop claim as a matter of law based on the "trained-server" exception. *See* TEX. ALCO. BEV. CODE. ANN. § 106.14(a). In its summary judgment motion, GRC also alleged Yarbrough's common law negligence, gross negligence, and criminal negligence claims were barred because the Texas Dram Shop Act provides the exclusive cause of action against commercial providers of alcoholic beverages. *See id.* § 2.03.

Yarbrough, however, contends the trial court erred in granting summary judgment in favor of GRC because there was more than a scintilla of evidence to show (1) GRC served alcohol to Birkes, who was an obviously intoxicated person, and (2) GRC encouraged its servers to over-serve patrons. For support, Yarbrough points to presuit deposition testimony of Birkes, who testified he had twenty-four drinks over the course of five hours on the night of the accident.

Yarbrough also points to Dr. Charles's affidavit, who testified that Birkes would have exhibited noticeable signs of intoxication, such as slurred speech and an inability to walk or stand. As to over-service, Yarbrough points to presuit deposition testimony that was ultimately excluded – that is, Broderick's testimony that GRC was "the place to go" if you wanted to get drunk and Jones's testimony that Ole Ingram Social Club practiced a policy of refusing service to individuals who were obviously drunk.

*Standard of Review*

We review a trial court's grant of summary judgment, both traditional and no evidence, de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Strandberg v. Spectrum Office Bldg.*, 293 S.W.3d 736, 738 (Tex. App.—San Antonio 2009, no pet.). When a party submits both a traditional and no evidence summary judgment motion, we review the no evidence motion first. *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 600 (Tex. 2004). This is because if the non-movant fails to meet its burden to produce more than a scintilla of evidence as to any challenged element, then we need not analyze whether the movant satisfied its burden to prove its entitlement to judgment as a matter of law by producing evidence of same. *Id.*

A no evidence motion for summary judgment is essentially a motion for a pretrial directed verdict to which we apply a legal sufficiency standard of review. *See* TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). We review the evidence in the light most favorable to the nonmovant, "crediting evidence favorable to [the nonmovant] if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the nonmovant produces more than a scintilla of evidence that raises a genuine issue of material fact, then summary judgment is not proper. *See* TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc.*, 206 S.W.3d at 581. "More than a scintilla of evidence exists when the evidence would enable reasonable and

fair-minded people to reach different conclusions." *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008); *Ford Motor Co.*, 13 5 S.W.3d at 601.

A traditional motion for summary judgment is granted only when the movant establishes there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Lesieur v. Fryar*, 325 S.W.3d 242, 246 (Tex. App.—San Antonio 2010, pet. denied) (citing *Browning v. Prostok*, 165 S.W.3d 336, 244 (Tex. 2005)). On review, we take evidence favorable to the nonmovant as true and indulge every reasonable inference from the evidence in its favor. *Id.* (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997)). In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and evidence favorable to the nonmovant is accepted as true. *Cole v. Johnson*, 157 S.W.3d 856, 859 (Tex. App.—Fort Worth 2005, no pet.) (citing *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995)).

*Texas Dram Shop Act*

The Texas Dram Shop Act imposes civil liability on providers of alcoholic beverages for damages resulting from the sale or service of alcohol to a person who is obviously intoxicated. *See* TEX. ALCO. BEV. CODE. ANN. §§ 2.01–.03; *F.F.P. Operating Partners, P.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007) (explaining history of Texas Dram Shop Act); *Toledo v. Silver Eagle Distribs.*, No. 01-11-00488-CV, 2013 WL 123657, at *3-*4 (Tex. App.—Houston [1st Dist.] Jan. 10, 2013, no pet.) (mem. op.); *Williams*, 2012 WL 3776347, at *4. Under the Texas Dram Shop Act, providing, selling, or serving an alcoholic beverage may be the basis of a statutory cause of action upon proof that:

> (1) at the time the provision occurred it was apparent to the provider that the individual ... was obviously intoxicated to the extent that he presented a clear danger to himself and others; and
> (2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.

TEX. ALCO. BEV. CODE. ANN. § 2.02(b). Section 2.03 of the act further provides that:

> The liability of providers under this chapter for the actions of their employees, customers, members, or guests who are or become intoxicated is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages. This chapter does not impose obligations on a provider of alcoholic beverages other than those expressly stated in this chapter. This chapter provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older.

*Id.* § 2.03 (formatting omitted). The statute also contains a "safe harbor provision" – what GRC refers to as its "trained-server" defense. *Id*. § 106.14(a). Section 106.14 provides:

> (a) For purposes of this chapter and any other provision of this code relating to the sales, service, dispensing, or delivery of alcoholic beverages to a person who is not a member of a private club on the club premises, a minor, or an intoxicated person or the consumption of alcoholic beverages by a person who is not a member of a private club on the club premises, a minor, or an intoxicated person, the actions of an employee shall not be attributable to the employer if:
>
> > (1) the employer requires its employees to attend a commission-approved seller training program;
> >
> > (2) the employee has actually attended such a training program; and
> >
> > (3) the employer has not directly or indirectly encouraged the employee to violate such law.

*Id*. Under this provision, the owner of an establishment is not liable for the actions of its employee – specifically, over-service – so long as the above three elements are established. *Id.* According to the Texas Supreme Court, providers of alcoholic beverages have the burden of proof as to the first two elements. *20801, Inc. v. Parker*, 249 S.W.3d 392, 395 (Tex. 2008); *Williams*, 2012 WL 3776347, at *4. On the other hand, the plaintiff bears the burden of proof as to the third element. *20801, Inc.*, 249 S.W.3d at 395; *Williams,* 2012 WL 3776347, at *4. In meeting its burden of proof, a plaintiff need only show that the employer acted negligently; evidence of encouragement may include "evidence that the provider ordered or rewarded over-service, modeled inappropriate

behavior by himself serving alcohol to obviously intoxicated people, failed to punish employees for over-service, or set 'an excessively high minimum sales quota without regard to the number of patrons.'" *Williams,* 2012 WL 3776347, at \*5 (quoting *20801, Inc.*, 249 S.W.3d at 398). An employer is not required to have a formal policy against over-service, but when providers do have such a policy, they are not required to show that their policy was enforced on the occasion giving rise to the lawsuit. *20801, Inc.*, 249 S.W.3d at 397-400; *Williams,* 2012 WL 3776347, at \*5. "In light of the shifting burden of proof on the elements of the safe harbor provision, a party wishing to assert this affirmative defense by summary judgment should file a traditional motion for summary judgment as to the first two elements and a no-evidence motion for summary judgment as to the third evidence, properly shifting the burden to the plaintiff to produce evidence of encouragement." *Williams,* 2012 WL 3776347, at \*5 (citing *20801, Inc.*, 249 S.W.3d at 399-400).

*Application*

In this case, GRC filed a traditional and no-evidence motion for summary judgment, asserting it conclusively proved the first two elements of the safe harbor provision under the standard for a traditional motion for summary judgment, and asserting there was no evidence of the third element of the safe harbor provision. *See id.* As to the traditional motion, McCormick testified she was one of the owners of GRC and GRC was a licensed provider that required its employees to attend and complete seller-server training programs approved by the TABC. McCormick specifically identified which employees were working the night of the incident and verified each of them had completed a seller-server training program and were certified on the night of the incident. To further confirm this evidence, copies of GRC's TABC license and training certificates of the employees working that night were attached to GRC's motion. Based on this evidence, we hold GRC established the first two elements of the safe harbor defense as a matter of law. *See id.* (holding owner's affidavit confirming employees working on night of incident had

completed TABC seller-server training programs was sufficient evidence to conclusively establish first two elements of safe harbor defense); *see also Primera Enters., Inc. v. Autrey*, 349 S.W.3d 167, 170 (Tex. App.—El Paso 2011, no pet.) (stating evidence that every employee working on evening in question had seller training certifications from TABC established first two elements of safe harbor defense).

In response to GRC's no evidence motion for summary judgment as to the issue of whether GRC encouraged its employees to over-serve patrons, Yarbrough argued GRC encouraged over-service by failing to prevent or punish employees who over-served. *See id.* (listing failing to punish employees for over-service as one way to establish encouragement). In support of his argument, Yarbrough first points to deposition testimony from Broderick and Jones; however, that testimony was excluded by the trial court. Other than the evidence excluded by the trial court, the only other evidence Yarbrough points to is testimony from GRC's owner, McCormick, who stated she was unaware that the Kerrville Police Department was called to GRC seventy-eight times during the twelve month period before the accident. McCormick also testified she was unaware that two of those calls resulted in two of her employees getting arrested for getting drunk at work or that there were three documented cases of breach of the peace allegations. Yarbrough contends this testimony was evidence of GRC's encouragement of over-service. According to Yarbrough, by failing to punish the employees involved in these incidents, McCormick encouraged her employees to engage in over-service. However, the reported incidents do not indicate how the actions of GRC employees with regard to their own intoxication and breach of the peace equate to alleged over-service of *patrons*. *See id.* (highlighting that under the safe harbor provision, an employee's action "in overserving a patron" shall not be attributable to employer so long as three elements met). At most, the evidence shows GRC employees were drinking at work on those occasions and law enforcement was contacted to respond to some type of disturbance. There is no evidence to

establish the disturbance involved patrons who were over-served. *See id.* Therefore, contrary to Yarbrough's assertion, we hold there is nothing in the summary judgment evidence to satisfy Yarbrough's burden to show GRC "directly or indirectly encourages its employees to violate the law." *See* TEX. ALCO. BEV. CODE. ANN. § 106.14(a); *Williams,* 2012 WL 3776347, at *5.

The dissent asserts the jury could infer "some of the other seventy-six calls" to the police to respond to GRC in the twelve months preceding the accident were for intoxication-related incidents based on the evidence that two of the calls resulted in two GRC employees being arrested "for getting drunk on the job." Such an inference, however, would be mere conjecture or surmise given that the evidence specifically provides facts detailing which of the calls were for intoxication-related incidents. "[S]ummary judgment evidence that raises no more than a surmise or suspicion of a fact in issue does not show a genuine issue of material fact exists to defeat summary judgment." *Hill v. Hill*, 460 S.W.3d 751, 759 (Tex. App.—Dallas 2015, pet. denied); *see also Leach v. James*, 455 S.W.3d 171, 177 (Tex. App.—Amarillo 2014, pet. denied) (noting "conjecture or surmise is not the stuff upon which [a] reasonable inference may be founded").

More importantly, the dissent relies on the evidence that McCormick failed to discipline the two employees who were arrested as evidence that GRC encouraged over-service. In doing so, the dissent disagrees with our analysis distinguishing between GRC employees over-serving alcohol to themselves and over-serving alcohol to patrons and accuses the majority of substituting our judgment for that of the Texas Legislature.

In our analysis, however, we are discussing the unique safe harbor provision the Texas Legislature chose to include in the Texas Dram Shop Act. *See 20801, Inc.*, 249 S.W.3d at 395 & n.5 (noting provision is unique and research had not revealed any other state with a similar statute). This safe harbor provision was established by the Texas Legislature to shield employers against vicarious liability for the actions of employees acting within the course and scope of their

employment. *See id.* at 397 n.6. As such, the safe harbor provision is focused on the training of employees in the service of alcohol to patrons. *See id*. at 394 (describing safe harbor provision as relating to "actions of an employee in over-serving a patron"). This is apparent in the first two requirements for receiving safe harbor protection — requiring attendance at a seller training program and the employee's actual attendance at such a program. Despite the safe harbor provision's focus on employers taking actions to prevent their employees from over-serving patrons, however, the dissent contends we should read the third requirement more broadly. The dissent suggests we should hold an employer vicariously liable for injuries caused by an intoxicated patron in the absence of any evidence that the employer directly or indirectly encouraged its employees to over-serve alcohol to patrons so long as the evidence shows the employer failed to discipline two employees the employer should have known were drinking on the job. We disagree with this broad reading of the safe harbor provision.

In disagreeing with the dissent, our opinion should not be read to mean an employer could not be held liable if an employer permitted an obviously intoxicated employee to continue drinking on the job and the employee's intoxication was a proximate cause of another's injuries. We simply hold that in deciding whether an employer should be held vicariously liable for injuries caused by an intoxicated patron, the focus must be on whether the employer directly or indirectly encouraged its employees to over-serve alcohol to patrons.

Accordingly, because GRC conclusively established the first two elements of a safe harbor defense and Yarbrough failed to produce a scintilla of evidence as to the third element of the defense, we hold the trial court did not err in granting summary judgment in favor of GRC with regard to Yarbrough's claims under the Texas Dram Shop Act.

*Negligence Claims*

As noted above, in its summary judgment motion, GRC also alleged Yarbrough's negligence claims under the common law were barred because the Texas Dram Shop Act provides the exclusive remedy for actions against commercial providers of alcoholic beverages. GRC is correct.

The Texas Alcoholic Beverage Code specifically provides:

The liability of providers under this chapter for the actions of their employees, customers, members, or guests who are or become intoxicated *is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages.*

TEX. ALCO. BEV. CODE. ANN. § 2.03. (emphasis added). Interpreting this provision, the Texas Supreme Court specifically held the Texas Dram Shop Act "was clearly intended to pre-empt common law claims against commercial sellers of alcohol for claims that arise from sellers' provision of alcohol." *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 453 (Tex. 2002). Yarbrough's negligence claims against GRC are common law claims against a commercial seller of alcohol and arise from the commercial seller's provision of alcohol to Birkes and Moran. Accordingly, the Texas Dram Shop Act preempts his negligence claims as a matter of law. *See id.* Therefore, the trial court properly granted summary judgment in favor of GRC as to Yarbrough's common law negligence claims.

## CONCLUSION

Based on the foregoing, we overrule Yarbrough's issues and affirm the trial court's summary judgment in favor of GRC.

Marialyn Barnard, Justice